**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION**

ELIZABETH CARDONA, ET AL.,

                    Plaintiffs,

       v.

VIVINT SOLAR, INC., ET AL.,

                    Defendants.

Case No. 8:18-cv-02838-SCB-JSS

**DEFENDANTS VIVINT SOLAR, INC. AND VIVINT SOLAR DEVELOPER, LLC'S
MOTION FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM OF LAW**

Defendants, Vivint Solar, Inc. and Vivint Solar Developer, LLC (collectively "Vivint Defendants"), by and through the undersigned counsel and pursuant to Fed. R. Civ. P. 56, move for summary judgment in their favor on all claims asserted in the Complaint (DE 1) of Plaintiffs Elizabeth Cardona ("Cardona") and Jerard Brown ("Brown").

**PRELIMINARY STATEMENT**

This case is nothing but smoke and mirrors. Plaintiffs' counsel did not bring this case to redress their clients' alleged injuries stemming from a single credit inquiry for each. Instead, this case is about attorneys' fees. Plaintiffs' counsel has filed multiple other identical lawsuits like this one against Defendant Vivint Solar Developer, LLC ("Vivint Solar") based on the same allegations as those raised in this action.[1] And, through those lawsuits, counsel claims to have uncovered "evidence" that will convince a jury that Vivint Solar has engaged in a nationwide practice of

---

[1] Unsurprisingly, the allegations in the other cases are virtually identical to allegations in the Complaint in this action, as they were authored by the same counsel. *See i.e.* Complaint (June 20, 2018) in *Rasmussen v., Vivint Solar Developer, LLC, et al.*, Pinellas County Circuit Case No. 18-0041290-CI. (**Ex. 1**)

pulling customers' credit reports without permission. However, no determination of liability or judgment has been entered in any of those cases, and this Court has already narrowly tailored the so-called "pattern and practice" evidence in this case to other similar complaints from Florida customers made in 2016 or 2017. *See* Order (DE 34) at 4-5. In reality, Plaintiffs' counsel filed this case and the other cases solely to: (1) create the illusion of pattern and practice evidence and (2) coerce Vivint Solar into paying inflated settlements. This self-serving agenda has foreclosed Plaintiffs' counsel from evaluating each of the cases independently.

As such, in this particular case, Plaintiffs overlook the major distinction from the facts in other cases that are not before this Court: they allege that their credit reports were obtained without their permission under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*, ("FCRA"), but **neither of the Vivint Defendants ran Plaintiffs' credit**. Co-Defendant Solar Mosaic, Inc. did.[2] In Florida, Vivint Solar offers the sale of solar panels to customers but partners with Solar Mosaic, a completely separate and unrelated financing company, to offer financing to its customers. While in other states Vivint Solar offers power purchase agreements or lease products plus solar panel systems to its customers, in Florida Vivint Solar only offered solar system purchases during the relevant time.[3] This is important because Plaintiffs are attempting to impose liability on Vivint Solar for credit inquiries it did not make and credit reports it did not use, obtain, or otherwise benefit from – a prerequisite for liability under the FCRA. *Jimenez v. Account Servs.*, 233 F. Supp. 3d 1359, 1365 (S.D. Fla. 2017). Even if Vivint Solar could somehow be found liable for Solar Mosaic's credit pulls – which it cannot under the FRCA – it was Solar Mosaic's processes that

---

[2]  None of Plaintiffs' counsel's other lawsuits pending outside of Florida include Solar Mosaic as a defendant. This is a key distinction that Plaintiffs fail to appreciate.

[3]  With leases and the power purchase agreements, Vivint Solar requires homeowners to qualify with a certain credit score because it makes an upfront investment with the cost of the solar system. However, with system purchases, which were offered to Plaintiffs here, there is no reason for Vivint Solar to qualify homeowners. The decision to provide financing to customers is determined solely by Solar Mosaic.

allowed those pulls; not processes of Vivint Solar.  Therefore, Plaintiffs' focus on Vivint Solar's processes in this litigation is misplaced, and irrelevant.

This is not the only flaw in Plaintiffs' case.  As set forth in greater detail below, the Plaintiffs' allegations that their credit was pulled without permission is contradicted by the record evidence.  Even if Plaintiffs did not provide consent for the inquiry, Solar Mosaic had a reasonable belief that they did when the credit was obtained.  This reasonable belief is sufficient under the law.  Further, Plaintiffs did not suffer any damages from the credit pulls.  The credit inquiries were retracted after each Plaintiff notified Solar Mosaic, and neither Plaintiff suffered economic harm.  While they assert generic claims of emotional distress and invasion of privacy, those claims rest entirely on their self-serving testimony – neither of them sought any treatment for their claimed injuries.  Plaintiffs further have no evidence to raise a genuine issue of material fact that would support their allegation that Vivint Defendants willfully violated the FCRA, they have no basis to assert declaratory relief claims under Florida law seeking wholly duplicative of relief sought in their FRCA claims, and they have failed to make any allegation or demonstrate any facts that would support liability against Vivint, Inc., which is only the parent company of Vivint Solar.

Accordingly, Plaintiffs cannot show a genuine issue of fact supporting their claims, and Vivint Defendants are entitled to summary judgment in their favor.

## STATEMENT OF MATERIAL FACTS

1.      Cardona is a resident of Orlando in Orange County.  DE 1 at ¶3.

2.      Brown is a resident of Valrico in Hillsborough County.  *Id*. at ¶2.

3.      Although Plaintiffs brought their claims in a single action, originally filed in Hillsborough County Circuit Court on October 15, 2018, and removed to this Court by Defendants

(*Id.*), each Plaintiff raises separate claims against each of the three Defendants for alleged FRCA violations and for declaratory relief under Chapter 86, Florida Statutes.

4.      Plaintiffs and their claims have no relationship, as they interacted with different Vivint Solar salespersons who reported to different offices and did not know each other.  Depo. Ricardo Martins (July 23, 2019) at 38:18-20; 65:15-17 (**Ex. 2**) Depo. Mitchell Coan (July 23, 2019) at 25:5-21; 113:20-24 (**Ex. 3**).

**Plaintiff Elizabeth Cardona's Claims**

5.      On January 23, 2017, Cardona met with Ricardo Martins, a former Vivint Solar salesperson, at her home to discuss solar panels, and during this meeting, Solar Mosaic ran Cardona's credit to determine if she qualified for financing.  Cardona's Resps. To Defs.' 1st Interrogs. (Sept. 5, 2019) (**Ex. 4**) at Nos. 3-5.

6.      Cardona claims that she never gave consent for Solar Mosaic to perform a credit inquiry in a credit application to determine her qualification for financing of solar panels for her home, and she disputes the validity of a Prospective Customer Consent Form ("PCCF") bearing her electronic signature expressly providing consent to have her credit run by Vivint Solar's affiliates such as Solar Mosaic.  *Id.*; Cardona PCCF (**Ex. 5**).

7.      Cardona filed a complaint with the Better Business Bureau ("BBB") on January 24, 2017 (**Ex. 6**), and the credit inquiry was "suppressed" by Solar Mosaic and converted a "soft" inquiry, which means the inquiry would not impact Cardona's credit score or would not be visible to creditors.  Depo. Jared Smith (October 15, 2019) (**Ex. 7**) 34:3-12; 83:6-18.

8.      Despite filing a BBB Complaint on January 24, 2017 and attesting that she was satisfied with the resolution offered (*see* Ex. 6), Cardona filed the instant action on October 15, 2018, more than 21 months after she filed her BBB complaint.

4

9.     Ricardo Martins testified that he explained to Cardona that her credit would have to be run to determine if she qualified for financing, and during the sales meeting with her, she submitted a credit application to Solar Mosaic, which authorized Solar Mosaic to perform a credit inquiry.  Ex. 2 at 25:11-27:9; 29:5-17; 33:1-17; 74:6-78:14.

10.    Cardona filed an insurance claim for storm damage to her roof and that claim was paid in August 2016.  Ex. 4 at No. 23.

11.    Cardona was actively pursuing home improvements and financing thereof around January 23, 2017 – the date she met with Ricardo Martins – and just days after she met with Martins at her home to discuss solar panels for her roof, Service Finance Company, LLC and Foundation Finance Company performed hard credit inquiries on Cardona, as reflected by **Ex. 8**:

| | | | |
|---|---|---|---|
| ▸ FNDTN FINANC | Feb 1, 2017 | Mar 2019 | Finance |
| ▸ SERVICE FIN | Feb 1, 2017 | Mar 2019 | Finance |
| ▾ SOLAR MOSAIC | Jan 23, 2017 | Feb 2019 | Finance |

12.    Like Solar Mosaic, Service Finance Company, LLC and Foundation Finance Company (FNDTN Finance) offer financing for solar panels.  *See*, *e.g.*, https://www.svcfin.com/; https://www.svcfin.com/.[4]

---

[4] This fact is important for two reasons: 1) it belies Cardona's argument that she had no interest in buying or financing solar panels and did not know her credit would be run in order to qualify for financing to purchase solar panels, and 2) to the extent Cardona claims her credit was negatively impacted by Solar Mosaic's single credit inquiry, these two other contemporaneous hard inquiries would have had a similar negative impact on her credit, creating an unresolvable of causation for any purported damages she could attribute to Solar Mosaic's single credit inquiry.

13.     On April 6, 2017, G&A Certified Roofing recorded a Notice of Commencement of home improvements for Cardona's home in the public records of Orange County.  *See* **Ex. 9**.

14.     Cardona's claim of damages has only been quantified as $10 she purportedly paid to freeze her credit to each of the three credit bureaus, and she claims damages for her "outrage" and "fears" but has not sought any treatment for her alleged emotional distress.  Ex. 4 at 13.

**<u>Plaintiff Jerard Brown's Claims</u>**

15.     On September 26, 2017, Brown met with Mitchell Coan, a former Vivint Solar salesperson, at his home to discuss solar panels, and during this meeting, Solar Mosaic ran Brown's credit to determine if he qualified for financing.  Brown's Resps. To Defs.' 1st Interrogs. (Sept. 5, 2019) (**Ex. 10**) at Nos. 3-5.

16.     Brown claims that he never gave consent for Solar Mosaic to perform a credit inquiry for a credit application to determine his qualification for financing of solar panels for his home, and he disputes the validity of a PCCF bearing his electronic signature expressly providing consent to have her credit run by Vivint Solar's affiliates such as Solar Mosaic.  *Id.*; Brown PCCF (**Ex. 11**).

17.     Brown filed a complaint with the BBB on October 15, 2017 (**Ex. 12**), and the credit inquiry was "suppressed" by Solar Mosaic and converted a "soft" inquiry, which means the inquiry would not impact Brown's credit score or be visible to creditors.  Ex. 7 at 34:3-12; 83:6-18.

18.     Despite filing a BBB Complaint on October 15, 2017 and attesting that he would be satisfied with the resolution offered (which was provided) (*see* Ex. 12), Brown filed the instant action exactly one year after he filed his BBB complaint.

19.     Mitchell Coan testified that he explained to Brown that his credit would have to be run to determine if he qualified for financing, that Brown provided his contact information and

6

*hand* signed the consent form, and during the sales meeting, Brown submitted a credit application that authorized Solar Mosaic to perform a credit inquiry.  Ex. 3 at 130:2-134:23; 144:23-145:3; 160:21-24; Ex. 11.

20.     Additionally, there was a third witness to the September 26, 2017, sales meeting with Brown, as Coan was shadowed by a salesperson-in-training, Jacob Thebert, who provided a written account (**Ex. 13**) of what he observed shortly after the encounter:

---------- Forwarded message ---------
From: Jacob Thebert
<jacob.thebert@vivintsolar.com>
Date: Tue, Oct 24, 2017 at 5:54 PM
Subject:
To: Mitchell Coan
<mitchell.coan@vivintsolar.com>

My name is Jacob thebert my badge id is
206261. The day I shadowed mitchell coan
on the day he met jerard brownI remember
this situation very well. Mitchell coan was
very clear that the customers credit had to
be ran, and not only did he state it clearly
more than once but the customer
acknowledged that it was part of the
qualification process. I just wanted to give
some insight on the situation
Thank you for all your hard work
Respectfully
Jacob Thebert

21.     Additionally, as reflected in the public records, Brown purchased his home a few months before the sales meeting, on February 14, 2017.  **Ex. 14**.

22.     Brown has not quantified any actual out-of-pocket damages, and he claims damages for his "fears" and feeling "violated" but has not sought any treatment for his alleged emotional distress.  Ex. 10 at 12.

## **Vivint Defendants Did not Pull Credit Reports of Plaintiffs**

23.     It is an undisputed fact in this case that Plaintiffs credit reports were obtained by Solar Mosaic to make a determination as to whether or not Plaintiffs would qualify for financing through Solar

Mosaic, an independent financing company offering financing solutions to consumers who are interested in purchasing solar panel systems, such as those sold by Vivint Solar.  Depo. Briant Quinn Katilus (Oct. 16, 2019) (**Ex. 15**) at 34:1735:14; 66:8-69:2; Ex. 7 at 15:25-17:8; 19:5-25; 34:13-35:3; 39:21-41:4.

24. **The Vivint Defendants never used or obtained Plaintiffs' credit information, and first saw Plaintiffs' credit reports after this lawsuit was filed.**  Vivint Defs' 2d Supp. Objs. & Resps. to Pls.' Interrogs. (Nov. 12, 2019) (**Ex. 16**) at Nos. 6-7, 9-11.

25. Nonetheless, with respect to assisting customers in the submission of credit applications to Solar Mosaic, Vivint Solar trained its sales representatives on compliance with the FCRA, including the proper method of completing a credit application and the importance of having the consumer sign.  Ex. 15 at 22:19-23:6; Ethic Standards (**Ex. 17**).

26. Solar Mosaic has had policies and procedures in place to ensure it had a permissible purpose to access a consumer's credit, and Solar Mosaic had no reason to believe the credit reports it obtained for Plaintiffs were not in accordance with its policies and procedures.  Ex. 7 at 107:10-21; 109:4-111:18.

27. In obtaining the applications of Plaintiffs consenting to their credit inquiries, Solar Mosaic was furnished the last four digits of Plaintiffs' social security numbers and other personal information that is typically only in possession of an individual consumer.  *Id*. at 34:13-38:14.

## <u>MEMORANDUM OF LAW</u>

## I.     Summary judgment standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A party may move for summary judgment on any "claim or defense," or "part of [a] claim or defense."  *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  On issues for which the nonmovant would bear the burden of proof

the movant has two options: (1) it may simply point out a lack of evidence to support the nonmoving party's case; or (2) it may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *U.S. v. Four Parcels of Real Prop. in Green & Tuscaloosa Ctys*, 941 F.2d 1428, 1438 (11th Cir. 1991). "The burden then shifts to the nonmoving party, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). A court must view the evidence and reasonable inferences in the light most favorable to the nonmovant, *Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006), but the non-moving party must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen'l Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985).

## II.   ARGUMENT

### a.  The Vivint Defendants Cannot Be Liable under FRCA because They Did not Pull, Use, or Obtain Plaintiffs' Credit Reports

It is an undisputed fact that the credit reports of Plaintiffs at issue in this case were obtained and used by Solar Mosaic – not the Vivint Defendants – to make a decision about whether or not Solar Mosaic would offer them financing. As such, Plaintiffs' FRCA claims fails at the elemental level because they cannot demonstrate any set of facts to prove the Vivint Defendants pulled, used, or obtained their credit reports.[5]

An FCRA claim based on an impermissible use of consumer reports requires a plaintiff to prove: "(i) that there was a consumer report; (ii) that defendants used or obtained it, (iii) that they did so without a permissible statutory purpose, and (iv) that they acted with the specified culpable mental state." *Jimenez*, 233 F. Supp. 3d at 1365 (emphasis added). "Under that statute civil

---

[5] While Plaintiffs' counsel has been pursuing litigation against Vivint Solar in other states where the company does offer financing to customers directly, and might obtain and use their credit reports, this was not the case with Vivint Solar's sales in Florida during the relevant time.

liability for improper use and dissemination of credit information may be imposed only on a consumer reporting agency or user of reported information who willfully or negligently violates the FRCA." *Rush v. Macy's New York, Inc.*, 775 F.2d 1554, 1557 (11th Cir. 1985). A party is not a "user" within the meaning of the FCRA and cannot be held liable for obtaining unauthorized credit information on a consumer when the party merely forwards credit applications to third-party entities and makes no credit determination. *Hageman v. Twin City Chrysler-Plymouth, Inc.*, 369 S.E.2d 99, 101 (N.C. App. 1988).

In *Hageman*, the plaintiff's spouse signed an automobile lease with defendant and provided a credit application to be submitted to a third-party credit corporation, which denied the spouse's application after a credit inquiry. *Id*. at 100. Plaintiff decided to establish credit in his name to finance his spouse's lease, so the third-party credit corporation conducted a credit investigation on plaintiff and also denied his credit application. *Id*. The plaintiff then sued defendant, alleging it obtained credit information on him under false pretenses in violation of § 1681q because "he was not an applicant for credit with the [defendant or the third-party credit corporation], did not authorize a credit application on his behalf, and that the credit inquiry was unlawfully initiated by the [defendant], causing him humiliation, embarrassment, and emotional distress." *Id*. However, the Court held that the defendant was not liable under the FCRA because, even though it offered the financing services to its customers and forwarded credit applications to a third-party credit corporation, it was not a "user" under § 1681q – the defendant made no credit determination and did not use, or even see, the consumer credit information gathered. *Id*. at 101. "[A]n automobile dealer that merely transmits credit applications to a third party is also not a 'user' under the Act." *Id*. (citing *Rush*, 755 F.2d 1554).

10

Likewise, and shown by the undisputed facts of this case, Vivint Solar never used or obtained Plaintiffs' credit reports.  Rather, Plaintiffs' credit reports were obtained and used solely by Solar Mosaic to make credit determinations about Plaintiffs with respect to their qualifications to purchase solar panels from Vivint Solar.  Vivint Solar does not require Florida homeowners to qualify with a certain credit score; instead, all credit decisions are made by Solar Mosaic or other financing partners.  In fact, Vivint Solar never even saw Plaintiffs' credit reports until they were produced in discovery in this action.  As such, Vivint Defendants cannot be liable under the FCRA because Vivint Solar in Florida "merely transmits credit applications to a third party" – Solar Mosaic – and by definition, Vivint Defendants were not "users" of Plaintiffs' credit reports.  On this basis alone, the Court must enter summary judgment in favor of Vivint Defendants on all of Plaintiffs' claims in this action.

**b. Solar Mosaic Had a Permissible Purpose to Obtain Plaintiffs' Credit Reports**

Whether there is a permissible purpose is a matter of law, appropriate for summary judgment.  *See, e.g.*, *Anutani v. Diversified Consultants Inc.*, No. 16-4221, 2017 U.S. Dist. LEXIS 2604 at *3-4 (E.D. Pa. Jan. 9, 2017); *Saumweber v. Green Tree Servicing, LLC,* No. 13-cv-03628, 2015 U.S. Dist. LEXIS 65175 at *8 (D. Minn. May 19, 2015) (citations omitted).  A permissible purpose exists where there is a "legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer."   15 U.S.C. § 1681b(a)(3)(F).  Significantly, legitimate business need is determined from the perspective of the entity obtaining the credit report at the time the report was obtained.  *See, e.g.*, *James v. Interstate Credit & Collection, Inc.*, No. 03-CV-1037, 2005 U.S. Dist. LEXIS 15495, at *11 (E.D. Pa. July 29, 2005) ("[S]o long as a user has reason to believe that a permissible purpose exists, that user may obtain a consumer report without violating the FCRA."); *see also Korotki v. Thomas, Ronald & Cooper,*

11

*P.A.*, No. 96-1877, 1997 U.S. App. LEXIS 34157 at *6-7 (4th Cir. Sept. 29, 1997) ("The terms 'legitimate business need' and 'in connection with' refer to the needs and objections [sic] of the individual to whom the report is furnished, not the needs of the person about whom the report is furnished."); *Daniel v. Bluestem Brands, Inc.*, No. 13-11714, 2014 U.S. Dist. LEXIS 2383, at *12 (E.D. Mich. Jan. 9, 2014) ("[A] potential creditor does not violate section 1681b(f) when it accesses a plaintiff's credit report for a permissible purpose, even if the plaintiff's identity was stolen and the plaintiff did not initiate the business contact.").

In this case, Solar Mosaic obtained Plaintiffs' credit reports and had a permissible purpose to do so. *See* 15 U.S.C. § 1681b(a)(3)(F) (one such permissible purpose is that a credit reporting agency may furnish a consumer report "[t]o a person which it has reason to believe . . . has a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer . . . ."). Plaintiffs submitted credit applications to Solar Mosaic to determine if they qualified for financing. Even if Solar Mosaic did not have consent to obtain Plaintiffs' credit reports, courts apply the "reasonable belief" standard from 15 U.S.C. § 1681b(a)(3)(F) to users of consumer reports to determine whether their reasons for acquiring the reports are permissible." *See Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890, 896 (D.S.C. 2016) (collecting cases). The reasonable belief standard is measured at the time of the credit inquiry. *Id*. When Solar Mosaic requested the credit inquiries, Solar Mosaic had a reasonable belief that it had a permissible purpose in doing so given its receipt of a credit application from each Plaintiff.[6]

Thus, the record unequivocally demonstrates Solar Mosaic had a reasonable basis to believe it had a permissible purpose for obtaining the credit reports of Plaintiffs at that time of the

---

[6] Plaintiffs also voluntarily provided the last four digits of their social security numbers for the Solar Mosaic credit application. Ex. 7 at 34:13-38:14. Receipt of this confidential, nonpublic information reasonably signified to Solar Mosaic that it has a permissible purpose for obtaining the credit reports.

inquiry.  It is undisputed that Cardona met with a representative of Vivint Solar on January 23, 2017.  It is undisputed that a completed credit application was uploaded to Solar Mosaic's database on the same day.  Likewise, it is undisputed that Brown met with a representative of Vivint Solar on September 24, 2017.  It is undisputed that a completed credit application was uploaded to Solar Mosaic's database on the same day.  It is further undisputed that the credit application is the form that provides consent to pull credit.  And it is undisputed that Vivint Solar trained its sales representatives on compliance with the FCRA, including the proper method for, and importance of, having the consumer complete a credit application.

Those undisputed facts gave Solar Mosaic a reasonable belief that Plaintiffs provided consent to have their credit pulled such that Solar Mosaic had a permissible purpose to obtain their consumer reports.  Plaintiffs' interrogatory answers contending that they did not consent does not impact that reasonable belief of Solar Mosaic, and summary judgment in favor of Vivint Defendants, as well as Solar Mosaic, is warranted.

c. **Plaintiffs Cannot Establish Any Resultant Damages from Solar Mosaic's Credit Pull**

Assuming *arguendo* that Solar Mosaic did not have a permissible purpose for making the credit inquiries or a reasonable basis to belief that it did at the time, and that Vivint Defendants were somehow liable under the FRCA despite not having used or obtained Plaintiffs credit reports – all of which Vivint Defendants vehemently deny – Plaintiffs have not suffered any damages.  Section 1681n of the FCRA creates liability for any person who negligently fails to comply with the FCRA and provides that the plaintiff is entitled to actual damages as a result of the violation or $1,000, whichever is greater.  Cardona alleges that she suffered actual damages in the amount of $30.00 (payment of $10.00 to each CRA for credit freeze).  Brown does not allege that he suffered any quantifiable monetary damages.  Instead, he alleges that he suffered from emotional

distress but admits that he did not seek any treatment for same.  Brown does not provide any details about his alleged emotional distress.  Cardona's emotional distress claim suffers from the same flaw.[7]

While Plaintiffs likely intend to rely upon self-serving testimony of emotional distress to get their claims heard by jury, this is simply wrong.  Unlike the Third Circuit, where Plaintiffs' counsel practices, the Eleventh Circuit has not ruled on whether an FCRA plaintiff must present more than his own testimony as evidence of his emotional distress.  The district courts have not reached a consensus on this issue either.  The U.S. District Court for the Southern District of Florida held that an FCRA plaintiff's self-serving testimony of emotional distress is <u>not</u> enough to withstand summary judgment.  *See Rambarran v. Bank of Am., N.A.*, 609 F. Supp. 2d 1253, 1269 (S.D. Fla. 2009) (plaintiff's emotional damages claims did not survive summary judgment because he failed to provide corroborating evidence).  Other district courts in Eleventh Circuit agree.  *See, e.g.*, *Sampson v. Equifax Info. Servs., LLC*, No. CV204-187, 2005 U.S. Dist. LEXIS 19240, at *5 (S.D. Ga. Aug. 29, 2005) (collecting cases and concluding that an FCRA plaintiff "must produce some form of independent, corroborating evidence of her humiliation and embarrassment at trial to recover compensatory damages for emotional distress"); *Jordan v. Trans Union LLC*, No. 1:05 CV 305 GET, 2006 U.S. Dist. LEXIS 38785, at *7-8 (N.D. Ga. June 12, 2006) (holding, in a case arising under the FCRA, that "[t]he remainder of plaintiff's complaints such as feeling frustrated and degraded are insufficient, standing alone, to support damages for mental anguish.").

The Fifth Circuit has spoken on this issue and is in agreement with the above cited district court cases.  *See Cousin v. Trans Union Corp.*, 246 F.3d 359, 370-71 (5th Cir. 2001) (holding, in

---

[7] Neither Plaintiff has identified an expert regarding emotional distress, and the deadline to identify experts expired in July.

the context of the FCRA, that a claim for "emotional distress must be supported by evidence of genuine injury . . . requir[ing] 'a degree of specificity which may include corroborating testimony or medical or psychological evidence in support of the damage award.'").  It is well-settled that "failure to produce evidence of damage resulting from a FCRA violation mandates summary judgment." *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991)).

Here, Plaintiffs lack any genuine evidence of emotional distress damages, and admit that they have not suffered any actual damages.  In the absence of any concrete harm for the alleged statutory violations, Plaintiffs lack Article III standing to pursue their FRCA claims.  *See Spokeo Inc. v. Robins*, 136 S.Ct. 1540, 1549 (2016) (Article III of the U.S Constitution requires a concrete injury even in the context of a statutory violation); *Smith v. The Ohio State University*, 2016 WL 3182675 (S.D. Ohio June 8, 2016) (alleged "invasion of privacy" as a result of a statutory violation was not sufficient under *Spokeo* when plaintiffs admitted they suffered no concrete consequential damage).  Accordingly, this Court cannot find that Plaintiffs have suffered an injury-in-fact from their alleged violations of the FCRA, and summary judgment is appropriate on their claims.

### d.  Plaintiffs Cannot Establish a Willful Violation of the FCRA

Even if Plaintiffs' emotional distress claims somehow survive summary judgment, their undefinable emotional distress, coupled by the facts that the credit inquiries were immediately retracted and they suffered no cognizable credit harm or out-of-pocket damages, is simply not going to provide a jury award of anything close to the magnitude Plaintiffs seem to believe awaits them at the end of this lawsuit.  Rather than focusing on the narrow issues in this case, Plaintiffs' counsel has been consumed with pursuing "pattern and practice" evidence in the hopes of fabricating a willfulness claim under the FCRA that would permit recovery of punitive damages.

"To establish a willful violation of the FCRA, plaintiff must show that a defendant 'knowingly and intentionally committed an act in conscious disregard for the rights of others, but need not show malice or evil motive.'" *Jenkins v. AmeriCredit Fin. Servs.*, No. 14-cv-5687, 2017 U.S. Dist. LEXIS 57560 at *23 (E.D.N.Y. Feb. 14, 2017) (quoting *Baker v. McKinnon*, 152 F.3d 1007, 1013 (8th Cir. 1998)).  Willfulness can also be established by evidence of actions that involve "an unjustifiably high rise of harm that is either known or so obvious that it should be known." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007).  There is no willful violation of the FCRA if, at the time of the defendant's actions, his conduct could reasonably have been thought lawful, and his subjective intent is irrelevant. *Id*. at 70, n.20. Nothing in this record supports a finding of willfulness.

For this reason, Plaintiffs' counsel has engaged in excessive discovery beyond that contemplated by the Court's Discovery Order (DE 34) limiting "other complaint" evidence to Florida customer complaints from 2016 and 2017.  Indeed, Plaintiffs have issued subpoenas to each of the three CRAs (**Comp. Ex. 18**) seeking the very same documents that this Court found to be outside the scope of permissible discovery, resulting in Defendants' filing motions to quash in each action.  Two of the three districts courts have already ruled, quashing the subpoenas in part and agreeing with Defendants that Plaintiffs should not be permitted to circumvent this Court's Order: "Allowing them to obtain information directly from Trans Union, LLC, that they were prohibited from obtaining from Defendants would essentially render the discovery order meaningless."  *See* Opinion (DE 6), in *Cardona et al. v. Vivint Solar Inc., et al.*, Case No. 2:19-mc-00161 (E.D Penn. Sept. 26, 2019) (**Ex. 19**).  A U.S. District Court for the North District of Georgia, citing the Pennsylvania case, ruled similarly and quashed in part a subpoena issued to Equifax Information Services, LLC.  *See* Order (DE 8) in *Cardona et al. v. Vivint Solar Inc., et*

*al.*, Case No. 1:19-cv-04405-WMR-JFK (N.D. Ga. Oct. 31, 2019) (**Ex. 20**).  A motion to quash

Plaintiffs' subpoena to the third CRA remains pending.  *See* Notice of Supplemental Authority

(DE 10) (**Ex. 21**), in *Cardona et al. v. Vivint Solar Inc., et al.*, Case No. 3:19-mc-00079 (N.D Tex.,

Nov. 5, 2019).  Thus, no matter what "evidence" Plaintiffs believes their counsel gleaned from

other cases, the Court has already ruled that such evidence is not proportional to the needs of this

case.  Thus, it cannot be considered at the dispositive motion stage and is not admissible at trial.

Plaintiffs must face the reality of this case: the credit inquiries Plaintiffs' complain of were

not made by Vivint Solar.  As such, Vivint Solar's processes and "other complaints" simply have

no place in this action.  In any event, if the Court were to consider "pattern and practice" evidence

of Vivint Solar, Plaintiffs have not and cannot show, within the parameters already established by

the Court, that Vivint Solar was engaged in a systematic practice of obtaining credit reports without

permission in 2016 and 2017 in Florida.  Within this region during this timeframe, Vivint Solar

received only three other BBB complaints and Plaintiffs' counsel is representing one of them,

Rasmussen.[8]  Yet, Plaintiffs' counsel has failed to prosecute this other pending case in Pinellas

County.[9]  One of the other BBB complaints is just two sentences long and provides zero context:

**Consumer's Original Complaint:**
This company applied for a loan without my consent. Somehow they obtained my personal
information and cal gruber applied for a loan and I never signed or even spoke to him

Nor can Plaintiffs use each other's claims to bolster their own willfulness claims, as Vivint

Defendants intend to file a motion to bifurcate Plaintiffs' factually unrelated claims via a *motion*

---

[8] *See* **Ex. 22**.
[9] Plaintiffs' counsel's lack of prosecution of his only other Florida case, *Rasmussen v. Vivint Solar, et al.* ("*Rasmussen*"), seriously undermines his position that he can demonstrate a "pattern and practice" in Florida.  Plaintiffs' counsel has not done anything in the *Rasmussen* case since February 2019, when he filed a Second Amended Complaint, dropping a claim for punitive damages and claims for declaratory relief under Chapter 86, Florida Statutes – the same claims asserted in this case.  *See* **Ex. 23** (S.A.C.).

*in limine*.   In the unlikely event that Plaintiffs prevail on their willfulness claim, the rule of proportionality will not permit a court to award a six- or seven-figure award of punitive damages when their actual damages are statutory, paltry or non-existent.     In sum, Plaintiffs cannot demonstrate a pattern or practice by pointing to just two other BBB complaints of un-adjudicated and sparse allegations.   Plaintiffs cannot establish that Defendants' willfully violated the FCRA by obtaining Plaintiffs' credit reports (and due process prohibits punitive damages to someone with no actual damages) and they have not articulated or itemized any actual harm.   Thus, even if successful on their claims, each Plaintiff should be limited to the statutory damages cap of $1,000.

For the same reasons that Plaintiffs failed to demonstrate that Solar Mosaic lacked a permissible purpose under the FCRA to obtain his credit report, Plaintiffs also failed to establish that any of the Defendants acted willfully.   As discussed above, the record demonstrates that both Vivint Solar and Solar Mosaic had policies and procedures in place to ensure it had a permissible purpose to access a consumer's credit.   Solar Mosaic had no reason to believe the credit reports it obtained for Plaintiffs were not in accordance with its policies and procedures.   Accordingly, Solar Mosaic had a reasonable basis to believe it had a permissible purpose to obtain Plaintiffs' credit reports.   This reasonable belief also precludes Plaintiffs from pursuing their claims of willful violation of the FCRA.   *See Shannon v. Equifax Info. Servs., LLC*, 764 F. Supp. 2d 714, 7254 (E.D. Pa. 2011) (granting summary judgment to defendant where "Plaintiff has furnished no evidence that Defendant knowingly or intentionally disregarded his rights or violated the FCRA. Furthermore, Defendant's procedures and actions were not in reckless disregard of the FCRA.").

Similarly, the record here cannot support a finding of willfulness: Plaintiff have furnished no evidence that Vivint Defendants knowingly or intentionally disregarded their rights or violated the FCRA, or that Vivint Defendants' procedures and actions were in reckless disregard of the

FCRA. As such, Vivint Defendants are entitled to summary judgment as to Plaintiffs' allegations of willful (or any) violations of the FCRA.

    **e. Plaintiffs Seek Duplicative Declaratory Relief and Cannot State a Claim for Declaratory Relief under Florida Statutes, Chapter 86**

Counts IV through VI and X through XII of the Complaint seek entry of a declaratory judgment against each of the Defendants under Chapter 86, Florida Statutes, that their alleged conduct described in Counts I through III and Counts VII through IX violates the FRCA – essentially, a judicial pronouncement that the statute says what is says. These Counts are wholly redundant, as Plaintiffs' claims under the FCRA seek the very same declaratory judgment that Defendants violated the FCRA—specifically, 15 U.S.C. § 1681b. They also fail to state a valid cause of action for declaratory relief under chapter 86, Florida Statutes, which requires a plaintiff to allege the following:

> (1) there is a bona fide dispute between the parties; (2) the plaintiff has a justiciable question as to the existence or nonexistence of some right, status, immunity, power or privilege, or as to some fact upon which existence of such a claim may depend; (3) the plaintiff is in doubt as to the claim; and (4) there is a bona fide, actual, present need for the declaration.

*Ribaya v. Board of Trustees of City Pension Fund for Firefighters and Police Officers in City of Tampa*, 162 So. 3d 348, 352 (Fla. 2d DCA 2015). "The purpose of a declaratory judgment is to afford parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations." *Santa Rosa Cty. v. Adm. Comm., Div. of Adm. Hrgs.*, 661 So. 2d 1190, 1992 (Fla. 1995).

Here, Plaintiffs fail to allege elements (2), (3), and (4). Plaintiffs each allege that he or she "is in doubt concerning her [his] rights, and a bona fide present controversy exists between [Plaintiffs] and the Defendants concerning the proper interpretation of the [FCRA] and the parties' respective rights and obligations thereunder." DE 1, at ¶¶56, 99. Each alleges these issues

"include but are not limited to" whether the Defendants were lawfully able to run Plaintiffs' credit reports and, generally, what the parties' rights and obligations are concerning the FCRA in relation to Defendants' alleged conduct.  *Id.* at ¶56(a)-(b), ¶99(a)-(b).  Plaintiffs' conclusory allegations that they are "in doubt" are directly contradicted by other allegations in the Complaint.  For example, Plaintiffs each allege exactly the opposite two paragraphs prior, affirmatively stating that they have a right to relief under the FCRA:

> [Each Plaintiff] maintains that each of Defendants conduct violates the Fair Credit Reporting Act, 15 U.S.C. § 1681b, as the Defendants knew or should have known they did not have a permissible purpose to pull her credit, were on notice of the complained-of conduct through numerous complaints from other customers, but nonetheless continued and continue to allow their employees to violate the Act.

*Id.*, at ¶¶54, 97.  Plaintiffs therefore contradict their allegations that they are in doubt as to any legal right.  As such, there is no bona fide present controversy as to whether or not running someone credit without a "permissible purpose" violates the FCRA, and Plaintiffs have no basis to seek a judicial pronouncement under Florida law interpreting this federal statute.  Summary judgment on Counts IV-VI and X-XII is therefore appropriate on this basis alone.[10]

### f. Plaintiffs Fail to Allege Any Facts to Support Liability against Vivint Solar, Inc.

In their Complaint, Plaintiffs describe the Vivint Defendants as distinct entities: "Vivint Solar, Inc. is a Delaware corporation with a principal office at 1800 W. Ashton Blvd., Lehi, Utah 84043" (DE 1 at ¶4) and "Vivint Solar Developer LLC is registered in Florida as a foreign limited liability company with a principal office at 1800 Ashton Blvd. Lehi, Utah 84043" (DE 1 at ¶5).  But they fail to otherwise distinguish between Vivint Solar, Inc. and Vivint Solar Developer LLC, referring to the two companies as "solar energy providers" and defining them collectively as

---

[10] In *Rasmussen*, Defendants raised an identical argument in a motion for dismissal of that Plaintiffs' claims for declaratory relief under Chapter 86, Florida Statutes, and Plaintiffs filed a Second Amended Complaint dropping the spate claims for declaratory relief.  *See* Ex. 23.

"Vivint Solar."   Plaintiffs failed to allege any basis for treating these separate and distinct companies as a single entity or for pleading claims against them collectively without differentiating among them or their alleged actions.   And they have made no effort to so in discovery, which has revealed that Vivint Solar, Inc. is merely the parent company of Vivint Solar Developer, LLC – the company that actually sold solar panels in Florida and employed the salespersons who interacted with Plaintiffs – through an intermediary company, Vivint Solar Holdings, Inc.  Ex. 15 at 16:7-19:10; DE 7.  Plaintiff lack any legal or factual basis to assert claims against Vivint Solar, Inc.

In Florida, "[a] parent corporation will not be held liable for the actions of its subsidiary unless the subsidiary is deemed to be a mere instrumentality of the parent." *Federated Title Insurers, Inc. v. Ward*, 538 So.2d 890, 891 (Fla. DCA 1989).  As the *Ward* court explained:

> For a subsidiary to be considered a mere instrumentality of a parent corporation, there must be: (1) control of the parent over the subsidiary "to the degree that it is a mere instrumentality." (2) parent committed fraud or wrongdoing through its subsidiary. (3) unjust loss or injury to a claimant, such as when the subsidiary is insolvent.... A mere instrumentality finding is rare.  *Id*. (citations omitted)

*Id*. (citations omitted).  Moreover, as the Eleventh Circuit has stated: "Florida law allows a party to pierce the corporate veil and hold a parent corporation liable for its subsidiary's actions if it can demonstrate first, 'that the subsidiary was a 'mere instrumentality' of the parent,' and second, 'that the parent engaged in 'improper conduct' through its organization or use of the subsidiary.'" *SEB S.A. v. Sunbeam Corp.*, 148 Fed.Appx. 774, 800 (11th Cir.2005) (quoting *Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1320 (11th Cir.1998)).

Plaintiffs have failed to plead or prove any factual basis for this Court to pierce the corporate veils *of two entities* to impose liability on Vivint Solar, Inc. for the alleged acts of Vivint Solar Developer, LLC.   Nowhere have Plaintiffs even alleged, let alone shown with actual

evidence, that Vivint Solar Developer, LLC was a "mere instrumentality" of Vivint Solar, Inc. – a showing that courts find to be "rare." There are no allegations that Vivint Solar Developer, LLC was formed or used by Vivint Solar, Inc. to engage in improper conduct, or that Vivint Solar, Inc. exercised control over Vivint Solar Developer, LLC to such a degree that Vivint Solar Developer, LLC could be deemed not to have a separate corporate existence. Plaintiffs have joined Vivint Solar, Inc. as a defendant simply because it is the parent company of Vivint Solar Developer, LLC, which is not a valid basis of liability under Florida or federal law. As such, Vivint Solar, Inc. is entitled to summary judgment on all of Plaintiffs' claims on this basis alone.

## CONCLUSION

For the foregoing reasons, Vivint Defendants respectfully requests that this Court enter an Order granting summary judgment in their favor on all of Plaintiffs' claims in the Complaint.

Date: Nov. 15, 2019

/s/ *Brian R. Cummings*, Esq.
Brian R. Cummings, Esq.
Greenspoon Marder LLP
Florida Bar No. 25854
SunTrust Financial Centre
401 E. Jackson St., Suite 1825
Tampa, FL 33602
Phone: (813) 769-7020
Fax:    (813) 426-8580
Brian.Cummings@gmlaw.com
*Attorneys for Defendants*
*Vivint Solar, Inc. and*
*Vivint Solar Developer, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing Motion has

been furnished via the CM/ECF system upon the following counsel of record:

| | |
|---|---|
| Andrew M. Milz<br>Flitter Milz, P.C.<br>450 N. Narberth Ave. Suite 101<br>Narberth, PA 19072<br>amilz@consumerslaw.com<br><br>Craig E. Rothburd<br>Craig E. Rothburd, P.A.<br>320 W. Kennedy Blvd., # 700<br>Tampa, FL 33606<br>craig@rothburdpa.com<br><br>*Attorneys for Plaintiffs* | Kalama M. Lui-Kwan<br>Troutman Sanders LLP<br>580 California St., Suite 1100<br>San Francisco, CA 94104<br>kalama.lui-kwan@troutman.com<br><br>Gillian DiFilippo Williston<br>Troutman Sanders, LLP<br>222 Central Park Ave Ste 2000<br>Virginia Beach, VA 23462<br>gillian.williston@troutman.com<br><br>Alice M. Grabe<br>Troutman Sanders LLP<br>222 Central Park Ave., Suite. 2000<br>Virginia Beach, VA 23462<br>alice.grabe@troutman.com<br><br>*Attorneys for Defendant Solar Mosaic, Inc.* |

Date:  Nov. 15, 2019

*/s/ Brian Cummings*
Brian Cummings

41795357