UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

---

**ELIZABETH CARDONA and JARED BROWN**

**Plaintiffs,**

**v.**                                    **Case No. 8:18-cv-2838-SCB-JSS**

**VIVINT SOLAR, INC., VIVINT SOLAR DEVELOPER, LLC, and SOLAR MOSAIC, INC.,**

**Defendants.**

---

**DEFENDANT SOLAR MOSAIC, INC.'S
MOTION FOR SUMMARY JUDGMENT;
MEMORANDUM OF LAW IN SUPPORT**

COMES NOW defendant Solar Mosaic, Inc. ("Mosaic"), by counsel, and files this Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. The Court should enter summary judgment in Mosaic's favor as to Counts III and VI pertaining to plaintiff Elizabeth Cardona and Counts IX and XII pertaining to plaintiff Jerard Brown. In support thereof, Mosaic files this memorandum of law and states the following:

**I.      INTRODUCTION**

This case stems from plaintiffs' attempts to purchase residential solar energy systems for their respective homes. Their lawsuit is primarily directed against their solar energy vendor Vivint Solar, Inc., and a related entity (collectively, "Vivint"). Vivint is in the business of selling and installing solar arrays. Secondarily, Cardona and Brown are also suing Mosaic, a separate and unrelated entity that finances residential solar energy

1

systems, from which plaintiffs sought loans to fund the purchase and installation of such systems.

Cardona and Brown each assert two identical claims against Mosaic. First, they claim that Mosaic violated the federal Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, ("FCRA") allegedly by obtaining their credit information without a permissible purpose (prohibited by 15 U.S.C. § 1681b) and/or under false pretenses (prohibited by 15 U.S.C. § 1681f). They claim Mosaic engaged in these behaviors both willfully and negligently (prohibited by 15 U.S.C. §§ 1681n and 1681*o*, respectively). Second, plaintiffs seek relief under the Florida Declaratory Judgment Act ("FDJA"). FLA. STAT. §§ 86.01–86.111.

As to Mosaic's alleged violation of section 1681b—FCRA's "permissible purpose" section—Mosaic undeniably had a permissible purpose for pulling credit on Cardona and Brown: it received loan applications from both of them. FCRA permits lenders to pull credit histories on prospective borrowers before rendering a decision as to their creditworthiness. The would-be borrowers' consent is not required for this type of credit pull. And even if Cardona and Brown take the position that they did not intentionally apply for loans through Mosaic—a point on which their complaint is equivocal—it is indisputable that Mosaic received credit applications appearing to be from them and that it therefore reasonably believed it had a permissible purpose to pull their credit reports.

As to Mosaic's alleged violation of 15 U.S.C. § 1681f—FCRA's "false pretenses" section—it is undisputed that no one from Mosaic was present at the time Cardona and

Brown submitted their credit applications using Mosaic's electronic form. It would have been impossible for Mosaic to pull plaintiffs' credit under "false pretenses" when Mosaic was not even on the scene to make any representations to plaintiffs, whether true or false. And Mosaic was not in a position to exert any control over statements made by Vivint's salesperson, the only other person who was on the scene.

Without the underlying FCRA claims, Cardona and Brown's FDJA claims against Mosaic die on the vine. Mosaic did not violate FCRA in its dealings with Cardona and Brown; and other than the question of FCRA liability, there is no remaining ambiguity as to the nature of plaintiffs' "rights, status, and other equitable or legal relations" with respect to Mosaic. FLA. STAT. § 86.011.

For these reasons, there are no genuine disputes of material fact between plaintiffs and Mosaic. Judgment in Mosaic's favor is appropriate as a matter of law, based on Rule 56.

## II.   <u>FACTUAL BACKGROUND</u>[1]

The following facts are undisputed.

---

[1] This Court's Amended Case Management and Scheduling Order, dated August 5, 2019, set the fact discovery cut-off for October 18, 2019, and the dispositive motion deadline for November 15, 2019. ECF 38 at 1, ¶¶ 5, 6. The Order emphasizes that "[m]otions to amend any pleading or to continue the pretrial conference, trial or any other scheduled deadlines are distinctly disfavored," and later reiterates that "motions to extend time or to alter any requirements set forth in this order of the other rules governing summary judgment motions . . . are distinctly disfavored." *Id.* at 2, ¶¶ 9, 10(d). These deadlines have not been continued by the Court, nor has Mosaic been approached by any of the other parties regarding a stipulation to alter them. Grabe Declaration ¶ 20. Plaintiffs unilaterally requested an extension of the discovery deadline on September 27, but the Court has not yet ruled on it. ECF 40 at 13. For its part, Mosaic completed all the discovery it intended to do before October 18, despite a late-breaking change in counsel of record which made this a challenging endeavor. *Id.* ¶ 21. However, not all parties to the lawsuit have honored the Court's scheduling order. For example, on November 14, plaintiffs' counsel circulated third party discovery responses from Trans Union, commenting at the time that "[w]e expect additional documents and an affidavit, and will produce these to you as soon as we have them from [Trans Union]." *Id.* ¶¶ 22, 23. Moreover, plaintiffs' depositions are scheduled for November 19, 2019. *Id.* ¶ 24. At this juncture, the Court should exclude from consideration any and all discovery requested or produced in this

40505562

A.    <u>**Mosaic's Loan Origination Process**</u>

Mosaic is a lending platform that specializes in financing the purchase and installation of residential solar energy systems and batteries. Declaration of Cheri Groom ("Groom Declaration") ¶ 6. In the course of conducting this business, Mosaic partners with a variety of solar sales and installation companies, including but not limited to Vivint. *Id.* ¶ 7.

Mosaic does not directly solicit or interact with prospective customers; rather, customers apply for credit in connection with their discussions with one of Mosaic's installation partners—a process over which Mosaic exercises little or no direct control. *Id.* ¶ 8; *see also* Complaint ¶¶ 20, 75 (conceding that Mosaic does not directly approach consumers about borrowing money). Once the customer submits an electronic credit application, Mosaic's automated systems review the customer's data inputs, obtain a credit report, and then either approve or decline the loan application—all in a nearly instantaneous process. Groom Declaration ¶ 9; *FAQs on Mosaic from Homeowners*, attached as Exh. A to Declaration of Alice M. Grabe ("Grabe Declaration"), at 1–2. The

---

case after October 18. District courts in the Eleventh Circuit routinely exclude evidence produced after the close of discovery from consideration on motions for summary judgment. *See, e.g., Brown v. Gulf Coast Jewish Family Servs., Inc.*, No. 8:10-cv-1749-T-27AEP, 2011 WL 3957771, at *4 (M.D. Fla. Aug. 9, 2011). The Court's consideration of untimely discovery would severely prejudice Mosaic—the lone party who has adhered to the Court's scheduling order with respect to the discovery cut-off. More precisely, it would force Mosaic to expend attorney fees and costs in requesting leave to file an amended summary judgment motion and (if that request is granted) preparing a second motion for summary judgment. Further, if Mosaic were required to file a second motion for summary judgment, it would do so in possible violation of paragraph 10(f) of the scheduling order, which prohibits multiple summary judgment motions. Mosaic would also likely need to propound additional discovery of its own in order to probe new issues raised by untimely discovery from the other parties. In essence, a continuance of the discovery and dispositive motion deadlines this late in the game would have the effect of hitting the re-set button on the entire lawsuit.

consumer's new solar equipment serves as collateral for the loan. Groom Declaration ¶ 10.

### B.   Cardona and Brown's Loan Applications

On two separate occasions in 2017, one or more Vivint salespeople met with Cardona and Brown respectively. Complaint ¶¶ 16, 71. In the course of the ensuing discussions, Cardona and Brown (or someone acting in their names) applied for loans using Mosaic's electronic loan application, by means of an online form on an iPad supplied by the Vivint salesperson. Deposition Transcript of Evan Pack ("Pack Deposition"), attached as Exh. B to Grabe Declaration, at 46:19–21; *see also* Groom Declaration ¶ 11. The form consisted of an electronic set of data fields that could be populated by the consumer. Groom Declaration ¶ 12.[2]

A Mosaic employee, testifying under oath, described the next steps of the loan application process as follows:

> The customer interfaces with a device that's connected to the Internet. And they're presented with disclosures which they can agree to, and proceed to the form where they input their information. They type in their information. And then they press a button to submit that information for the purpose of determining whether they are eligible for credit for a Mosaic loan. . . .
>
> There would be a - - a blank field with text, either in front of it or above it, indicating what information is requested in that field.
>
> So for example, date of birth, and a blank field where the customer can use a keypad, or an electronic

---

[2] The complaint claims that Cardona "specifically told the [Vivint Solar] representative that she did not want her credit report pulled" in connection with her loan application and that the "Vivint Solar representative assured Ms. Cardona that they were not going to look at her credit." Complaint ¶¶ 21, 22. As for Brown, the complaint does not indicate that he proactively withheld his consent to have his credit report pulled as Cardona did, but it does allege that he "never provided any authorization to have his credit report pulled by Vivint Solar." *Id.* ¶ 78.

> keypad in the case of a tablet, where they can type in the
> characters that represent their response to that field. . . .
>      If - - if the customer consented or asked the –
> someone else to complete those fields on their behalf, that
> would be possible. But the expectation that Mosaic has, is
> that the consumer him or herself is inputting those fields on
> their own behalf.

Deposition Transcript of Jared Smith ("Smith Deposition"), attached as Exh. C to Grabe

Declaration, at 29:6–13, 30:23–31:6, 31:17–22.

### C.   <u>Mosaic's Decisions on Plaintiffs' Loan Applications</u>

As the Mosaic employee went on to explain, "when the customer submits or

inputs data onto the credit application, and they submit their credit application . . . the

decision whether or not to extend credit . . . is made almost instantaneously. After the

data is submitted on the credit application, it's passed through Mosaic's credit engine,

which renders a decision." Smith Deposition at 40:7–9, 15, 18–21. Electronic data that

Mosaic receives from the consumer reporting agencies is one of the major factors that

informs this near-instantaneous decision concerning whether to extend credit. *Id.* at

40:22–25; *see also* Groom Declaration ¶¶ 9, 14–19; *Mosaic Credit Q&A*, attached as

Exh. D to Grabe Declaration.

Here, Mosaic initially declined both Cardona and Brown's loan applications for

various reasons, although Cardona was re-reviewed and approved shortly thereafter. *See*

*Data from Mosaic's Database*, attached as Exh. E to Grabe Declaration, at 1, 5; Smith

Deposition at 39:21–40:15 (authenticating and explaining database printout); Groom

Declaration ¶¶ 14–19; Email from Mosaic to Elizabeth Cardona, dated January 23, 2017,

attached as Exh. F to Grabe Declaration (advising of Cardona of loan approval); Email

40505562

from Mosaic to Jerard Brown dated September 26, 2017, attached as Exh. G to Grabe

Declaration (advising Brown of loan denial). The heart of plaintiffs' case against Mosaic

is Mosaic's so-called "hard credit pull"—that is, its request for Cardona and Brown's

credit reports in connection with the evaluation of their credit applications.[3]

### III.    LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely
> disputed must support the assertion by: (A) citing to
> particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those
> made for purposes of the motion only), admissions,
> interrogatory answers, or other materials; or (B) showing
> that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party
> cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

---

[3] In credit-reporting lingo, a so-called "soft pull" of a consumer's credit report does not impact a consumer's credit score and is not visible to third parties, whereas a "hard pull" can affect a consumer's credit score and is visible to third parties. *Banga v. First USA, N.A.*, 29 F. Supp. 3d 1270, 1274 n.2 (N.D. Cal. 2014); *see also Doak v. Capital One, N.A.*, No. 5:18-cv-07102-EJD, 2019 WL 4645162 at *4 (N.D. Cal. Sept. 24, 2019); *Adler v. DirecTV, LLC*, No. CV 18-1665-DMG (PJWx), 2018 WL 6981838, at *1 (C.D. Cal. Oct. 24, 2018); *Duncan v. JPMorgan Chase Bank, N.A.*, Civil No. SA-14-CA-00912-FB, 2016 WL 4419472, at *10 (W.D. Tex. May 24, 2016). In this case, the challenged credit pulls by Mosaic were "hard pulls" but were later converted to "soft pulls" at Mosaic's request. *See* Smith Deposition at 83:8–85:21; Letter from Mosaic to Experian dated October 30, 2018 re: Elizabeth Cardona, attached as Exh. H to Grabe Declaration; Letter from Mosaic to TransUnion dated October 30, 2018 re: Elizabeth Cardona, attached as Exh. I to Grabe Declaration; Letter from Mosaic to Experian dated February 23, 2018 re: Jerard Brown, attached as Exh. J to Grabe Declaration; TransUnion Inquiry Suppression Request—Jerard Brown, dated February 23, 2018, attached as Exh. K to Grabe Declaration; Deposition Transcript of Emma Wilcox, attached as Exh. L to Grabe Declaration, at 10:16–21; 13:21–14:5; 21:7–11; 25:9–15.

7

"The Court should view the evidence and any inferences that may be drawn in the light most favorable to the non-moving party." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). "The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "'When the moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'" *Id.* at 1314 (quoting *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593–94 (11th Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986))); *see also Porter*, 461 F.3d at 1320; *Lawrence v. ACE Am. Ins. Co.*, 391 F. Supp. 3d 1077, 1079 (M.D. Fla. 2019).

## IV.   <u>ARGUMENT</u>

Based on the undisputed facts outlined above, Mosaic is entitled to judgment as a matter of law as to all of plaintiffs' claims.

### A.   <u>Mosaic Did Not Violate the Fair Credit Reporting Act</u>

FCRA's stated purpose is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b).

To that end, the statute prohibits the use or obtaining of a consumer's credit report for any purpose not explicitly enumerated in the statute. 15 U.S.C. § 1681b(f). FCRA's list of so-called "permissible purposes" includes, among other things, use in connection with the extension of credit to a consumer. 15 U.S.C. § 1681b(a)(3)(A).

In a similar vein, the statute also prohibits "knowingly and willfully obtain[ing] information on a consumer from a consumer reporting agency under false pretenses." 15 U.S.C. § 1681q.

Consumers have a private right of action with respect to both willful and negligent violations of FCRA, with the former carrying the possibility of punitive damages. 15 U.S.C. §§ 1681n & 1681*o*.

### 1.    Mosaic Obtained Plaintiffs' Credit Reports for a Permissible Purpose

Plaintiffs' first theory of relief relevant to Mosaic is that Mosaic pulled their credit reports without a permissible purpose. Complaint ¶¶ 51, 94. This theory holds no water.

### a.    A Creditor May Request a Consumer's Credit Report in Connection With Its Evaluation of That Same Consumer's Loan Application

FCRA permits credit pulls if the requestor "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." 15 U.S.C. § 1681b(a)(3)(A). In other words, a would-be creditor may lawfully evaluate a consumer's credit report for purposes of deciding whether to lend that consumer money and if so, on what terms. "'A showing of permissible purpose is a complete defense[ ]' to

40505562

a claim under the FCRA." *Tacoronte v. Cohen*, No. 6:13-cv-418-Orl-18GJK, 2014 WL 12873365, at *3 (M.D. Fla. April 14, 2014) (quoting *Daniel v. Bluestem Brands, Inc.*, No. 13-11714, 2014 WL 81763, at *4 (E.D. Mich. Jan. 9, 2014)).

Here, it is undisputed that Mosaic received loan applications purporting to be from Cardona and Brown. Groom Declaration ¶¶ 14, 17; Smith Deposition 39:21–40:13; *Data from Mosaic's Database*, attached as Exh. E to Grabe Declaration, at 4, 7. Under these circumstances, FCRA explicitly allowed Mosaic to pull Cardona and Brown's respective credit histories and consider them before rendering a decision as to plaintiffs' creditworthiness. Mosaic had a permissible purpose for pulling plaintiffs' credit and therefore has a complete defense in this regard.[4]

### b. A Creditor Need Not Obtain a Consumer's Consent to Pull Credit If, As Here, It Has Another Permissible Purpose

Notably, would-be creditors are not required to seek or obtain a consumer's permission in order to access his or her consumer credit report—so long as the report is being obtained for a permissible purpose such as evaluating creditworthiness in connection with the consideration of that consumer's loan application. *Wallace v. Finkel*,

---

[4] Actually, the Middle District of Florida has approved credit pulls under the "permissible purpose" standard in far more attenuated circumstances, where a lender and a party pulling credit are only loosely affiliated. For example, "'[w]here a prospective buyer signs a retail installment contract in which the seller makes clear that the dealer may attempt to assign tentative financing arrangements to third-party lenders, there is no FCRA violation for accessing the consumer's credit report.'" *Clouse v. Arcadia Chevrolet-Geo-Buick-Oldsmobile-Pontiac, Inc.*, No. 2:06-cv-242-FtM-34DNF, 2008 WL 11430042, at *4 (M.D. Fla. June 18, 2008) (quoting *Jones v. TT of Longwood, Inc.*, No. 6:06-cv-651-Orl-19DAB, 2007 WL 2298020, at *5 (M.D. Fla. Aug. 7, 2007)); *see also Miller v. Nationstar Mortgage*, No. 6:11-cv-1337-Orl-22DAB, 2013 WL 12091325, at *15–16 (M.D. Fla. Apr. 10, 2013) (holding that a mortgage servicer may pull a consumer's credit report in the course of evaluating him for loss mitigation options). Under section 1681b(a)(3)(A), Mosaic was even more clearly justified in pulling Cardona and Brown's credit than were the defendants in *Clouse*, *Jones*, and *Miller*, since Mosaic was the originating lender from whom plaintiffs were seeking financing.

10

No. CIVA 2:06CV05-SRW, 2006 WL 1731149, at *5 (M.D. Ala. June 22, 2006) (finding that the "plaintiff's consent or knowledge is not required if a report is obtained for a 'permissible purpose' set forth in § 1681b(a)(3)"); *see also Holness v. HHH Motors 2, LLP*, No. 3:17-cv-1177-J-39MCR, 2018 WL 6494715 at *4 (M.D. Fla. Nov. 14, 2018) (citing *Wallace* for this proposition); *Tucker v. Olympia Dodge of Countryside, Inc.*, No. 03 C 0976, 2003 WL 21230604, *2 (N.D. Ill. May 28, 2003) ("Under the FCRA, it is permissible to obtain a credit report on a consumer only with the written consent of the consumer *or* for certain permissible purposes." (emphasis added)). As the Eleventh Circuit succinctly stated in an unpublished opinion, "nothing in the FCRA requires a consumer's prior written permission before requesting a credit report." *Cosby v. First Tennessee Bank Nat. Ass'n, Inc.*, 545 F. App'x 796, 798 (11th Cir. 2013); *see* 11th Cir. R. 36-2 (unpublished opinions are to be treated as persuasive, though not binding).

Here, plaintiffs complain that they did not consent to Mosaic's credit pulls. Complaint ¶¶ 21, 22, 78; *see also* footnote 1, *supra*. However, neither their consent nor even their knowledge was required, since Mosaic had another independent permissible purpose for obtaining their credit reports: namely, the processing of plaintiffs' loan applications.

Moreover, plaintiffs' initial lack of success in obtaining loans from Mosaic does not necessarily mean that its credit pulls were impermissible. As one judge on this Court has previously observed in rejecting an identical argument, "such a reading of the FCRA is too narrow." *Meeks v. Murphy Auto Group, Inc.*, No. 8:09-cv-1050-T-TBM, 2010 WL 5174525, at *7 (M.D. Fla. Dec. 15, 2010).

11

40505562

c.    **Would-Be Creditors Are Protected by FCRA's "Reason to Believe" Standard**

The complaint is unclear about whether Cardona and Brown realized that they were applying for loans. To the extent Cardona and Brown's FCRA claim against Mosaic is predicated on a contention that Vivint's salesperson duplicitously applied for loans on plaintiffs' behalf and without their knowledge, Mosaic is nonetheless still entitled to judgment as a matter of law because it had every reason to believe that Cardona and Brown had themselves sought an extension of credit from Mosaic.

Strictly speaking, the list of permissible purposes in section 1681b(a) of Title 15 applies to consumer reporting agencies ("CRAs") only. Although Mosaic is not a CRA, subsection (f) of the same statute authorizes certified entities like Mosaic to obtain and use a consumer's credit report, so long as it is doing so for one of the permissible purposes listed for CRAs in subsection (a). Effectively, subsection (f) imports the list of CRA-approved permissible purposes from subsection (a) and applies them to end users of credit information like Mosaic.

Subsection (a)(3)(A) provides that a CRA may furnish a consumer report "[t]o a person which it has reason to believe . . . intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer[.]" As explained in section IV.A.1.a, *supra*, at a minimum this means that prospective lenders like Mosaic are authorized to pull credit on a loan applicant.

It is a slightly different question, however, whether users of credit information like Mosaic can only pull credit on *actual* loan applicants, or if they can pull credit on

40505562

consumers whom they *reasonably believe* are loan applicants. In other words, is the

"reason to believe" language from subsection (a) imported into subsection (f) along with

the list of permissible purposes?

According to the vast majority of federal district courts nationwide—and in at

least one instance in the Middle District of Florida—the answer is yes. "[S]o long as a

user has reason to believe that a permissible purpose exists, that user may obtain a

consumer report without violating the FCRA." *Foote v. Cont'l Serv. Grp.*, No. 6:18-cv-

73-ORL-40TBS, 2018 WL 3008880, at *2 (M.D. Fla. Jun. 16, 2018) (quoting *Korotki v.*

*Attorney Servs. Corp.*, 931 F. Supp. 1269, 1276 (D. Md. 1996), *aff'd*, 131 F.3d 135 (4th

Cir. 1997)).[5] For example, a creditor does not violate Section 1681b when it obtains a

---

[5] *See also Miller v. Dish Network, LLC*, 326 F. Supp. 3d 51, 64–65 (E.D. Va. 2018) (collecting cases from
the Fourth Circuit); *Trikas v. Universal Card Serv. Corp.*, 351 F. Supp. 2d 37, 42 (E.D.N.Y. 2005) (finding
that defendant bank, who had obtained plaintiff's credit report for an account plaintiff previously held at the
bank but had since closed, had a permissible purpose in reviewing what it believed to be an existing
account, even though plaintiff was no longer the bank's customer); *Geiling v. Wirt Fin. Servs., Inc.*, No. 14-
11027, 2014 WL 8473822, at *18 (E.D. Mich. Dec. 31, 2014) ("[Section 1681b(a)(3)] provides that the
reporting agency can furnish a report if it 'has reason to believe' that the prospective user 'intends to use
the information' for certain purposes. Extrapolating this to user liability, courts have concluded that a user
must merely have 'a reason to believe' a permissible purpose exists in order to escape liability." (internal
citation omitted)); *Daniel*, 2014 WL 81763, at *4–5 (concluding that plaintiff could not show defendant
violated the FCRA by obtaining her credit report from multiple agencies, even where plaintiff's identity
was stolen, because the defendant reasonably believed that it had a permissible purpose for seeking the
credit report associated with the information provided by the identity thief); *Alston v. Cent. Credit Servs.,*
*Inc.*, No. DKC 12-2711, 2013 WL 4543364, at *2 (D. Md. Aug. 26, 2013) ("[Section §1681b(a)'s] 'reason
to believe' standard has likewise been applied to users of the reports. . . . [T]his means that if a user had a
reason to believe that a consumer owed a debt, it would have a permissible purpose to access the
consumer's credit report."); *Wells v. Craig & Landreth Cars*, No. 3:10-CV-00376, 2010 WL 4810623, at
*2 (W.D. Ky. Nov. 18, 2010) ("Section 1681b allows a lender to access a potential borrower's credit report
if the lender has reason to believe the information is to be used 'in connection with a credit transaction
involving the consumer on whom the information is to be furnished and involving the extension of credit
to, or review or collection of an account of, the consumer.'" (quoting § 1681b(a)(3)(A) and citing §
1681b(f)(1)); *Carter v. MBNA Am. Bank*, No. 1:05-CV-2703-TWT, 2006 WL 8432582 at *2 (N.D. Ga. Jul.
28, 2006) (applying § 1681b(a)'s "reason to believe" standard to defendant bank, a user of credit
information under §1681b(f), and finding defendant had reason to believe a permissible purpose existed to
obtain plaintiff's credit report for collection purposes); *Shah v. Collecto, Inc.*, No. Civ.A.2004-4059, 2005
WL 221641 at *12 (D. Md. Sept. 12, 2005) (concluding that if a user of credit information had a reason to
believe that a consumer owed a debt, it would have a permissible purpose to access the consumer's credit

---

credit report due to an imposter's application for credit—even though the identity theft victim did not make the application—because in that context it was reasonable for the creditor to believe it had a permissible purpose to pull the consumer's credit. *Glanton v. DirecTV, LLC*, 172 F. Supp. 3d 890, 896 (D.S.C. 2016).[6]

While the Eleventh Circuit has so far not published any opinions discussing the application of the "reason to believe" standard to alleged violations of section 1681b(f), it issued an unpublished opinion earlier this year in which it affirmed a district court order to that effect. In *Middlebrooks v. Sacor Financial, Inc.*, the magistrate judge with whom the matter originated concluded that "[t]he 'reason to believe' standard applies not only to the consumer reporting agency, as contemplated by § 1681b(a), but also to the users of the credit information governed by § 1681b(f)." No. 1:17-cv-0679-SCJ-JSA, 2018 WL 4850122, at *15 (N.D. Ga. Jul. 25, 2018), *report and recommendation adopted*, 322 F. Supp. 3d 1300 (N.D. Ga. 2018), *aff'd in part, appeal dismissed in part*, 775 F. App'x 594 (11th Cir. May 30, 2019).

---

report and would not violate the FCRA in doing so)*; James v. Interstate Credit and Collection, Inc.*, No. Civ.A.03-CV-1037, 2005 WL 18006501, at *3 (E.D. Pa. Jul. 29, 2005) (upholding summary judgment for defendant collection agency because it had a reason to believe a permissible purpose existed for accessing plaintiff's credit report); *Kennedy v. Victoria's Secret Stores, Inc.*, No. Civ.A.03-2691, 2004 WL 2186613, at *3 (E.D. La. 2004) (dismissing FCRA claim involving consumer's allegations that a store clerk had opened an account in plaintiff's name without permission, because clerk obtained consumer report believing she would use the information to either extend credit, or to review or collect on an account—both of which were permissible purposes).

[6] *See also, e.g.*, *Frazier v. RJM Acquisitions LLC*, No. 14-0047, 2015 WL 795078, at *3 (D. Md. Feb. 24, 2015) (finding no FCRA violation because "[t]he email and the declaration show that the Defendant had reason to believe a debt existed, even if the Plaintiff is correct that the debt did not exist"); *Bracken v. Fannie Mae Consumer Res. Ctr. Inc.*, No. 6:13-cv-1983, 2014 WL 5527837, at *7 (D.S.C. Oct. 31, 2014); ("Under Section 1681b, all that is required is that Fannie Mae had 'reason to believe' that it had a permissible purpose to access Bracken's credit report, not that it was the actual owner of the account."); *Alston*, 2013 WL 4543364, at *2–3 (commenting that defendant "has produced evidence of a permissible purpose in accessing Plaintiff's credit report—to collect a debt that it had 'reason to believe' Plaintiff owed" and concluding that there was no FCRA violation).

14

In adopting the magistrate's report, the district judge elaborated: "In order to defeat a claim under 15 U.S.C. § 1681b, a user need only demonstrate that it 'had reason to believe that a permissible purpose existed.' . . . A company can have 'reason to believe that a permissible purpose existed' even if the company made a mistake or was deliberately misled about the underlying facts." 322 F. Supp. 3d at 1304 (quoting *Carter v. MBNA Am. Bank*, No. 1:05-CV-2703-TWT, 2006 WL 8432582, at *2 (N.D. Ga. July 28, 2006)). The Eleventh Circuit, affirming this portion of the order, commented:

> [S]ummary judgment was appropriate on Middlebrooks's FCRA claim. As the owner of the Middlebrooks's judgment and debt, Sacor had a "permissible purpose," *or at least a reasonable belief that it had such a purpose*, in obtaining her consumer report because it was seeking information in connection with the collection of an account. 15 U.S.C. § 1681b(a)(3)(A). Accordingly, we affirm as to this issue.

775 F. App'x at 598 (emphasis added).[7]

On the subject of whether Cardona and Brown realized that they were submitting loan applications to Mosaic, the complaint is evasive. It alleges that "Ms. Cardona was not provided, nor given the opportunity to review, any paperwork or documents, paper or electronic," and that she "did not sign or authorize the Vivint Solar representative to use her signature." Complaint ¶¶ 23, 25. Identical allegations are made for Brown. *Id.* ¶¶ 76,

---

[7] Prior to the Eleventh Circuit's opinion in *Middlebrooks*, a judge in the Northern District of Alabama issued an order holding to the contrary. *Blumenfeld v. Regions Bank*, No. 4:16-cv-01652-ACA, 2018 WL 4216369, at *5 (N.D. Ala. Sept. 5, 2018) (declining to incorporate the "reason to believe" language from section 1681b(a) into section 1681b(f)). This case appears to be an outlier.

15

77. But the complaint itself carefully avoids saying that Cardona and Brown had no idea they were applying for financing.[8]

The Court is bound to draw factual inferences in plaintiffs' favor, since they are the non-moving parties. *Porter*, 461 F.3d at 1320. But even if the Court infers from the complaint's ambiguities that plaintiffs both failed to appreciate the fact that they were applying for new loans on the Vivint salesperson's iPad, it is undisputed that Mosaic *received* loan applications from both of them. Groom Declaration ¶¶ 14, 17; Smith Deposition 39:21–40:13; *Data from Mosaic's Database*, attached as Exh. E to Grabe Declaration, at 4, 7. Accordingly, Mosaic was reasonable in its belief that it had a permissible purpose for pulling plaintiffs' credit.

### d.    **Conclusion**

There is no genuine issue of material fact relevant to the permissible purpose analysis. Mosaic's indisputably permissible purpose in pulling plaintiffs' credit—and/or its reasonable belief in the existence of such a purpose—constitutes a complete defense. Mosaic is entitled to judgment as a matter of law on the issue of whether it violated section 1681b by pulling credit reports belonging to Cardona and Brown.

---

[8] *Compare* Pack Deposition 115:12–17; 117:5–9 (comment by plaintiffs' counsel that "[e]ach of my clients will testify that they never heard the word 'loan' during [Vivint's] sales presentation. . . . each one of those consumers says I never touched the iPad, I never heard of Solar Mosaic, no one ever told me about any loan, and I didn't allow my credit to be pulled.") *with id.* at 115:22–116:7 (Vivint witness response that "it depends on how [the salespeople are] talking about the financing option. For example, your earlier question, if they're talking about Solar Mosaic, whether or not they're using 'loan' to describe that, they may be talking through the different parameters, I don't know.") *and id.* at 112:7–15 (Vivint witness statement that "[w]hen providing any of the financing options, [Vivint salespeople] do talk about where that financing option is coming from. So if Solar Mosaic is available, it would be something they would talk about with the customer, if that's what the customer was selecting to choose as their financing option.").

16

2.    **Mosaic Did Not Obtain Plaintiffs' Credit Reports
Under False Pretenses**

Plaintiffs' second theory of relief is that Mosaic violated 15 U.S.C. § 1681q by

knowingly and willfully pulling their credit reports "under false pretenses." Like their

first theory, this one is not persuasive. There are no genuine factual disputes, and Mosaic

is entitled to judgment as a matter of law.

a.    **Mosaic Lacked the Requisite Mental State and Was Not
Even Present for the Challenged Transactions**

Many (but not all) courts determine whether a request for a consumer report has

been made under "false pretenses" solely by looking at the permissible purposes for

which consumer reports may be obtained under section 1681b of FCRA. *See Zamora v.*

*Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (10th Cir. 1987); *Zeller v. Samia*,

758 F. Supp. 775, 781 (D. Mass. 1991). Under this theory, any request that is not made

for a permissible purpose is considered to be made under false pretenses. *Id.*

A minority of courts, while relying on the accepted view that a request which is

not made for a permissible purpose is made under false pretenses, also add another

requirement: "Hence, a user who purports to seek a consumer report for a permissible

purpose, *while secretly seeking the report for an impermissible purpose*, is subject to

liability under the FCRA for obtaining information under false pretenses*." Allen v.*

*Calvo*, 832 F. Supp. 301, 303 (D. Ore. 1993) (emphasis added). Courts following this

view generally hold that "false pretenses" under section 1681q "requires not merely a

purpose which is not technically in compliance with the purposes set forth in section

40505562

1681b, but a calculated attempt to mislead another in order to obtain information." *Graziano v. TRW, Inc.*, 877 F. Supp. 53, 57 (D. Mass. 1995).

Here, Cardona and Brown cannot succeed on their section 1681q claim under either of these views. Under the majority view, as noted in Section IV.A.1, *supra*, Mosaic had a permissible purpose for pulling plaintiffs' credit, so the false pretenses claim goes nowhere. And under the minority view, plaintiffs do not even plead (and certainly cannot prove) that Mosaic made a calculated attempt to mislead them in order to obtain their credit information. Indeed, they make no allegations as to Mosaic's mental state at all. They could not credibly do so, since they effectively concede in the complaint that no one from Mosaic was present at the time they submitted their online loan applications on the Vivint salesperson's iPad. *See* Complaint ¶ 75 (alleging that "Solar Mosaic, Inc., does not directly approach the consumer about financing, but gets involved in a transaction when Vivint Solar's salesman goes door-to-door to make a sale, and Vivint Solar's salesman completes and submits an electronic credit application for Solar Mosaic, Inc. financing"); *see also* Smith Deposition 31:23–32:7. Mosaic could not have proceeded with plaintiffs' credit pulls under "false pretenses"; as the undisputed facts indicate, Mosaic was not on the scene to make any representations, whether true or false.

        b.    **Vivint's Salesperson Was Not Authorized to Act as Mosaic's Agent or to Speak for It in Any Way**

The complaint alleges that the Vivint salesperson who tried to sell solar energy equipment to Cardona and Brown failed to obtain consent for the credit pulls and, in the case of Cardona, even affirmatively told her that her credit would not be pulled. Complaint ¶¶ 21, 22, 78; *see also* footnote 1, *supra*. The complaint further alleges that in

18

so doing, the Vivint salesperson was acting as the agent of Mosaic as well as of Vivint. *Id.* ¶¶ 19, 74.

Under Florida law, a principal may be liable under actual agency or apparent agency principles. *Cavic v. Grand Bahama Dev. Co.*, 701 F.2d 879, 883 (11th Cir. 1983). There is no indication of *actual* agency here. Moreover, "[t]o plead the existence of an agency relationship via *apparent* agency, a plaintiff must allege: '(1) the alleged principal made some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal; (2) that such belief was reasonable; and (3) that the claimant reasonably acted on such belief to his detriment.'" *Serra-Cruz v. Carnival Corp.*, No. 1:18-CV-23033-UU, 2019 WL 4564378, at *5 (S.D. Fla. Sept. 19, 2019) (emphasis added; quoting *Zapata v. Royal Caribbean Cruises, Ltd.*, No. 12-21897-CIV, 2013 WL 1296298, at *5 (S.D. Fla. Mar. 27, 2013)).

Notwithstanding plaintiffs' exhaustive depositions of two Mosaic employees under Federal Rule of Civil Procedure 30(b)(6), and another under Rule 30(b)(1), no evidence of any of these elements has emerged. Nor are facts supporting the elements pleaded in the complaint. There is, in short, zero indication that Vivint or its salespeople possess actual or apparent authority to act as agents for Mosaic. Groom Declaration ¶ 11. They have no authority to bind Mosaic to any contracts or to speak for it in any way. *Id.* To the extent that the complaint is implying that Mosaic obtained plaintiffs' credit report under false pretenses because Vivint's salesperson told Cardona that her credit would not be pulled, the undisputed evidence, and even the complaint's own allegations, indicate that Mosaic had no role in any such representation. Consequently, even if a Vivint

19

salesperson made the challenged statement, Mosaic cannot be held responsible for that statement's falsity.

### c.    Conclusion

The undisputed facts show that Mosaic did not pull plaintiffs' credit under false pretenses. The Court should enter judgment as a matter of law in Mosaic's favor with respect to 15 U.S.C. § 1681q.

### 3.    There Is No Evidence That Mosaic Acted Willfully or Negligently

In addition to the above considerations, Mosaic is entitled to summary judgment on plaintiffs' FCRA claim for the simple reason that no evidence exists to indicate that it possessed the requisite mental state to commit a FCRA violation—whether willfully under 15 U.S.C. § 1681n or negligently under 15 U.S.C. § 1681*o*.[9]

Allegations that a defendant violated FCRA by obtaining plaintiff's consumer credit report without a permissible purpose "cannot be conclusory and must include specific facts as to a defendant's mental state when the report was accessed." *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1331–32 (S.D. Fla. 2014). Further, "in order to establish a willful violation of the FCRA, a consumer must prove either a knowing violation or that the alleged violator acted in accordance with an objectively

---

[9] Despite section 1681q's incorporation of the terms "knowingly and willfully," federal courts in at least two Circuits have found that noncompliance with § 1681q may form the basis for civil liability under either § 1681n or § 1681o. *Yohay v. City of Alexandria Employees Credit Union, Inc.*, 827 F.2d 967 (4th Cir. 1987); *Hansen v. Morgan*, 582 F.2d 1214 (9th Cir. 1978). Thus, users who either willfully acquire information under false pretenses from a consumer reporting agency, or who are negligent in allowing such information to be acquired, may incur civil liability under FCRA. *Shaw v. Shaw*, No. 93-874-CIV-ORL-10, 1994 WL 16014349, at *4 (M.D. Fla. June 27, 1994). If this Court follows suit, it can apply section 1681n (willfulness) and 1681o (negligence) equally to section 1681q without being limited by section 1681q's more narrow language pertaining to mental state.

40505562

unreasonable reading of the FCRA and with an unjustifiably high risk of violating the FCRA." *Lee v. Security Check*, No. 3:09-cv-421-J-12TEM, 2010 WL 3075673, at *12 (M.D. Fla. Aug. 5, 2010); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59–60 (2007) (holding that in order to establish willful noncompliance with FCRA for purposes of statutory and punitive damages, plaintiff must prove that defendant acted in a deliberate and purposeful manner in conscious disregard for plaintiff's rights).

Plaintiffs have made no attempt to plead or prove facts relevant to Mosaic's mental state or its supposedly reprehensible intentions in pulling their credit. Instead, they concede that their credit applications were electronic transactions in which they participated without any Mosaic representative being present. Without any mental-state evidence at all, plaintiffs' FCRA claim cannot survive summary judgment.

### 4.   Cardona & Brown Suffered No Damages

Yet another independent reason why plaintiffs' FCRA claims should be dismissed at the summary judgment stage is the lack of proof regarding Cardona and Brown's damages. It is well-settled in the Eleventh Circuit that "failure to produce evidence of damages resulting from a FCRA violation mandates summary judgment." *Nagle v. Experian Info. Sols., Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002); *see also Stone v. Saferent*, No. 6:16-cv-1457-Orl-18KRS, 2017 WL 4326051, at *3 (M.D. Fla. Sept. 27, 2017).

Here, Cardona and Brown have failed to produce any meaningful evidence of how they were damaged by Mosaic's supposedly impermissible hard credit pulls. Indeed, all the evidence tends to show that Cardona and Brown were not materially damaged by

40505562

these inquiries.

First, Mosaic took affirmative action to suppress the hard pulls and have them converted to soft pulls. Once this happened, they could not impact plaintiffs' credit scores any longer. *See* footnote 3, *supra*.

Second, Brown submitted his own evidence that Mosaic's hard pull had only a "low impact" on his credit scores from TransUnion and Equifax. *See Screen Shots from Credit Karma re: Hard Inquiries for Jerard Brown*, attached as Exhs. M & N to Grabe Declaration (commenting, respectively, "We noticed a few hard inquiries" and "Nice job keeping your hard inquiries low!"). While Cardona did not produce similar information, she also has not presented any evidence to indicate why Mosaic's hard pull on her credit would have affected her more severely than it affected her co-plaintiff Brown.

Third, plaintiffs' own interrogatory responses on the subject of damages are, at best, extremely vague and scanty, describing only de minimis dollar amounts at most. *See* Plaintiff Elizabeth Cardona's Responses to Defendants' First Set of Interrogatories No. 13, attached as Exh. O to Grabe Declaration (describing Cardona's outrage and fear but indicating that her only quantifiable damages resulted from her decision to place a freeze on her credit reports with TransUnion, Equifax, and Experian at a cost of $10 each); Plaintiff Jerard Brown's Responses to Defendants' First Set of Interrogatories No. 12, attached as Exh. P to Grabe Declaration (describing fear and anger but no quantifiable damages).

The absence of meaningful evidence regarding Cardona and Brown's damages is, all by itself, sufficient to doom plaintiffs' FCRA claims.

**B.**     **Plaintiffs Cannot State a Claim Against Mosaic
Based on the Florida Declaratory Judgment Act**

Plaintiffs also each seek relief under the FDJA. FLA. STAT. §§ 86.01–86.111.

Without any underlying FCRA violation, however, plaintiffs cannot "'show that there is a

bona fide, actual, present practical need for the declaration.'" *Espinoza v. Countrywide

Home Loans Servicing, L.P.*, No. 14-20756-CIV, 2014 WL 3845795, at *6 (S.D. Fla.

Aug. 5, 2014) (quoting *Santa Rosa Cnty. v. Admin. Comm'n, Div. of Admin. Hearings*,

661 So. 2d 1190, 1192 (Fla. 1995) (per curiam)). In order to trigger jurisdiction under the

FDJA, plaintiffs must show that they are in doubt as to the existence of some right or

status and are entitled to have that doubt removed. *Id.*

Without a viable FCRA claim against Mosaic, Cardona and Brown cannot meet

that burden. There is nothing left for the Court to "declare." As explained above, the

undisputed evidence shows that Mosaic did not violate FCRA in its dealings with

Cardona and Brown; and other than the question of FCRA liability, there is no remaining

ambiguity as to the nature of plaintiffs' "rights, status, and other equitable or legal

relations" with respect to Mosaic. FLA. STAT. § 86.011.

Consequently, the Court should grant summary judgment in Mosaic's favor as to

Cardona and Brown's two FDJA claims.

**V.     CONCLUSION**

For all of the foregoing reasons, Mosaic respectfully requests that the Court grant

summary judgment in its favor as to the following: Count III (Cardona's FCRA claim

against Mosaic); Count VI (Cardona's FDJA claim against Mosaic); Count IX (Brown's

FCRA claim against Mosaic); and Count XII (Brown's FDJA claim against Mosaic).

40505562

Dated: November 15, 2019

Respectfully submitted,

**SOLAR MOSAIC, INC.**

*/s/ Alice M. Grabe             .*
Alice M. Grabe (*pro hac vice*)
Gillian Williston
Florida Bar No. 14270
Troutman Sanders LLP
222 Central Park Avenue, Suite 2000
Virginia Beach, VA 23462
Telephone: (757) 687-7500
Facsimile: (757) 687-7510
gillian.williston@troutman.com
alice.grabe@troutman.com

Kalama M. Lui-Kwan (*pro hac vice*)
Troutman Sanders LLP
3 Embarcadero Center, Suite 800
San Francisco, CA 94111-4064
(415) 477-5758
kalama.lui-kwan@troutman.com

*Counsel for Defendant*
*Solar Mosaic, Inc.*