UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERARD BROWN and
ELIZABETH CARDONA,

     Plaintiffs,

v.                                       Case No. 8:18-cv-2838-T-24 JSS

VIVINT SOLAR, INC., ET AL.,

     Defendants.

_____/

## ORDER

This cause comes before the Court on two motions: (1) the Vivint Defendants' Motion

for Summary Judgment (Doc. No. 67), which Plaintiffs oppose (Doc. No. 140); and (2) Solar

Mosaic's Motion for Summary Judgment (Doc. No. 70), which Plaintiffs oppose (Doc. No.

141).[1]  As explained below, the motions are granted in part and denied in part.

## I.  Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). The Court must draw all inferences from the evidence in the light most favorable to the

non-movant and resolve all reasonable doubts in that party's favor.  See Porter v. Ray, 461 F.3d

1315, 1320 (11th Cir. 2006)(citation omitted).  The moving party bears the initial burden of

showing the Court, by reference to materials on file, that there are no genuine issues of material

fact that should be decided at trial.  See id. (citation omitted).  When a moving party has

---

[1] Mosaic also seeks leave to file a reply brief (Doc. No. 128), which Plaintiffs oppose (Doc. No. 129).
Mosaic asks to file a reply due to discovery that occurred after the filing of its motion for summary
judgment.  However, the Court had given Mosaic an opportunity to file an amended motion for
summary judgment due to the additional discovery (Doc. No. 96), and Mosaic declined to do so.
Thus, Mosaic had an opportunity to address the additional discovery, and leave to file a reply is not
warranted.  Accordingly, the Court denies Mosaic's motion to file a reply brief.

discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial.  See id. (citation omitted).

## II.  Background

Plaintiffs Jerard Brown and Elizabeth Cardona bring this lawsuit alleging violations of the Fair Credit Reporting Act ("FCRA") by Defendants.  Defendant Vivint Solar, Inc. is the parent company of Defendant Vivint Solar Developer, LLC (collectively referred to as "Vivint"), and they sell solar panels.  Defendant Solar Mosaic, Inc. ("Mosaic") is a financing company that finances solar energy systems.

Vivint's door-to-door salesmen go to potential customers' houses to attempt to sell Vivint's solar panels.  These salesmen have iPads with them, on which a potential customer can access Mosaic's online credit application to apply for financing for the purchase of Vivant's solar panels. Plaintiffs contend that Vivint's salesmen came to their houses and completed Mosaic's online credit application in Plaintiffs' names without Plaintiffs' knowledge or consent.  Thus, Plaintiffs contend that all three defendants acted together through Vivint's door-to-door salesmen to obtain Plaintiffs' credit reports under false pretenses and without any permissible purpose or authorization. Furthermore, such credit inquiries initially resulted in "hard" inquiries on Plaintiffs' credit reports, and a "hard" inquiry can negatively affect a person's credit score.[2]

---

[2] Experian, a major credit bureau, has explained the difference between "hard" and "soft" credit inquiries:  If a person applies for credit and the lender checks the person's credit report, that would be a hard inquiry (an inquiry tied to an actual credit application).  Hard inquiries can affect a person's credit score.  Soft inquiries, on the other hand, are not tied to a specific credit application, and they have no effect on a person's credit score.  See https://www.experian.com/blogs/ask-experian/credit-education/report-basics/hard-vs-soft-inquiries-on-your-credit-report/ (last accessed March 13, 2020).

Plaintiffs contend that the reason Vivint's salesmen might submit an unauthorized credit application is to meet Vivint's sales goals. For example, a current Vivint District Manager, Briant Katilus, who has worked for Vivint since 2014 (in Florida for parts of 2016 and 2017), stated that district managers would set goals for their salespeople, such as the number of accounts created. (Doc. No. 67-15, depo. p. 19-21, 109). An account is considered created when a homeowner's credit is checked and they qualify for a loan to buy Vivant's solar panels. (Doc. No. 67-15, depo. p. 109-10).

## A. Plaintiff Elizabeth Cardona

Cardona contends that on January 23, 2017, Vivant's door-to-door salesman, Ricardo Martins, came to her house and told her he was selling solar panels. (Doc. No. 126-18, depo. p. 28, 38-39). Cardona was planning to replace her roof, so she listened to Martins, because she wanted some basic information about solar panels and information to compare solar companies. (Doc. No. 126-18, depo. p. 40-45).

Martins asked for Cardona's email address so he could send her a proposal. (Doc. No. 126-18, depo. p. 44). Cardona gave Martins her phone number and email address, but Martins added an extra "0" to her email address, recording it incorrectly. (Doc. No. 126-18, depo. p. 48-50; Doc. No. 126-2, ¶ 11). Plaintiffs contend that Martins altered her email address so that she would not receive any email revealing that he had submitted a credit application in her name.[3]

Martins told Cardona that there were financing options available for the purchase of Vivint's solar panels, but he did not specifically identify Mosaic. (Doc. No. 126-18, depo. p. 45-

---

[3] A Vivint salesman in another state explained that salespeople would incorrectly record a homeowner's email address in order to hide documents from the homeowners; the homeowners would not receive documents emailed to the incorrect email address. (Doc. No. 126-4, depo. p. 31-34, 43-46, 104-06, 112).

46, 90-91).  Cardona responded that if she decided to get solar panels, she would pay cash.

(Doc. No. 126-18, depo. p. 45-46, 91).  Cardona never filled out the consent form to allow Vivint

or Mosaic to check her credit, nor did she provide her Social Security number.  (Doc. No. 126-

18, depo. p. 47-51; Doc. No. 126-2, ¶ 7-10).  Cardona told Martins several times not to check her

credit; if she was interested, she would pay cash.  (Doc. No. 126-18, depo. p. 93-94; Doc. No.

126-2, ¶ 5-6).

Two hours after Martins left, Cardona was notified that there was a credit inquiry on her

credit report.  (Doc. No. 126-18, depo. p. 49, 58).  Cardona called Martins to ask why he had run

her credit after she specifically had stated not to do so.  (Doc. No. 126-18, depo. p. 46, 54-56).

Cardona also filed a complaint with the Better Business Bureau ("BBB") and reported the

incident to the police.  (Doc. No. 126-18, depo. p. 56, 62-64; Doc. No. 126-2, Exs. A & B).  On

October 30, 2018 (almost two years later), Mosaic sent a letter to two of the credit bureaus

asking them to covert the hard inquiry into a soft inquiry.  (Doc. No. 126-22).

**B.  Plaintiff Jerard Brown**

Brown contends that on September 26, 2017, Vivant's door-to-door salesman, Mitchell

Coan, came to Brown's house and spoke with him about solar panels.  (Doc. No. 126-19, depo.

p. 52-53).  Brown did not consider it a sales pitch, because Coan told him that the solar panels

could be provided to him at no cost.  (Doc. No. 126-19, depo. p. 53-54, 60-61, 97-98, 141).

Brown did not tell Coan that he wanted to install solar panels; instead, he just wanted to get

information about solar panels.  (Doc. No. 126-19, depo. p. 59-60).

Brown provided Coan with his telephone number, email address, birth date, and electric

bill.  (Doc. No. 126-19, depo. p. 63).  Brown did not provide Coan with his Social Security

number, he did not sign any forms on Coan's iPad, nor did he consent to submission of a credit

4

application.  (Doc. No. 126-19, depo. p. 41, 61-71; Doc. No. 126-1, ¶ 17-19).  Coan told Brown that he would come back the next day with a proposal regarding the kind of panels that Brown needed and the money that Brown would save.  (Doc. No. 126-19, depo. p. 54).

Immediately after Coan left, Brown was alerted that a credit inquiry had been made by Mosaic.  (Doc. No. 126-19, depo. p. 51, 55, 61, 73, 76).  This was the first time that Brown had heard of Mosaic, as opposed to Vivint.  (Doc. No. 126-19, depo. p. 134-35).  Brown then called Coan and Vivint to tell them that he had not given them permission to check his credit.  (Doc. No. 126-19, depo. p. 78-79).  Brown later filed a complaint with the BB against Vivint.  (Doc. No. 126-19, depo. p. 89-90; Doc. No. 126-1, Ex. A).  He also contacted Mosaic.  (Doc. No. 126-19, depo. p. 91).

Brown ended up contacting Vivint and Mosaic many times trying to get the hard credit inquiry removed from his credit report.  (Doc. No. 126-19, depo. p. 156-58).  The credit inquiry was initially a hard inquiry, but on February 23, 2018, Mosaic sent letters to two credit bureaus asking that the hard inquiry be changed to a soft inquiry.  (Doc. No. 126-19, depo. p. 27, 29, 83-84, 102; Doc. No. 126-1, ¶ 16; Doc. No. 126-23).

## C.  Vivint and Mosaic's Knowledge of Unauthorized Credit Checks

Plaintiffs submitted evidence of Vivint and Mosaic's knowledge that many people had been complaining about unauthorized credit inquiries run by Mosaic after Vivint's salesmen had come to their houses.  (Doc. No. 126-28).  A prior employee of Vivint that had worked in various customer service departments from July of 2013 through January of 2016 stated that he commonly received calls from people complaining that Vivant checked their credit without their consent.  (Doc. No. 126-32, depo. p. 10-12).  Furthermore, between January 1, 2016 and

December 31, 2017, Equifax had 580 consumer disputes regarding credit inquiries from Vivint and Mosaic in Florida.[4] (Doc. No. 126-24, ¶ 2-4).

By January 4, 2017, prior to Plaintiffs' credit inquiries, Mosaic had sent an email to Vivint stating that an "unauthorized credit pull is a serious issue that has the attention of Senior Legal, Credit, and Compliance officers at Mosaic." (Doc. No. 126-28, p. 22). In that email, Mosaic asked Vivint to provide the following: (1) the results of any investigation and actions taken; (2) what process was in place to address the compliance and fraud alerts that Mosaic forwarded to Vivint when Mosaic got a customer complaint; and (3) whether Vivint had a zero tolerance policy for fraudulent behavior. (Doc. No. 126-28, p. 23).

On January 9, 2017, Mosaic sent another email to Vivint, in which Mosaic noted that it forwarded lots of compliance complaints to Vivint every week and that it was "looking more and more like a systemic issue." (Doc. No. 126-28, p. 19). Mosaic continued: "It's already big, I'm trying to stop it from getting bigger." (Doc. No. 126-28, p. 19).

By March 28, 2017, Mosaic noted that the number of compliance complaints being forwarded to Vivint was "becoming quite numerous." (Doc. No. 126-28, p. 69). Thereafter, in June 2017, Mosaic's representatives spent a day meeting with Vivint to discuss compliance issues, including "a few specific and very egregious" incidents. (Doc. No. 126-28, p. 80).

On July 6, 2017, a representative from Mosaic emailed Vivint regarding Briant Katilus' six compliance issues over a five-month period and stated: "I looked up his total loans and see that Briant does a high volume with Mosaic loans, which of course we appreciate. We just want

---

[4] Plaintiffs provided evidence that credit inquiries can be made to Equifax without providing the consumer's Social Security number. (Doc. No. 126-24, ¶ 10). This is consistent with Plaintiffs' contentions that they never provided the salesmen with their Social Security numbers. A Mosaic phone representative also stated that all that was needed to run a credit check was the person's date of birth. (Doc. No. 126-13, p. 7).

to make sure no one's engaging in highly non-compliant activity in the process . . . ."[5]  (Doc. No.

126-28, p. 88-89).  On July 14, 2017, Mosaic sent Vivint a chart detailing the number of

customer complaints regarding Vivint, which totaled 581 from February 2016 through July 2017.

(Doc. No. 126-28, p. 91-92).

### D.  Plaintiffs' Complaint

On November 19, 2018, Plaintiffs filed suit against Defendants, in which they assert

twelve claims.  Plaintiffs each assert a Fair Credit Reporting Act ("FCRA") claim against each of

the defendants (Counts I, II, III, VII, VIII, and IX).  Additionally, Plaintiffs each assert claims

for declaratory relief (asking the Court to declare that Defendants' conduct violated the FCRA)

under Florida's Declaratory Judgment Act against each of the defendants (Counts IV, V, VI, X,

XI, and XII).

## III.  Motions for Summary Judgment

Both Mosaic and Vivint move for summary judgment on all of the claims asserted against

them.  Before the Court analyzes the motions, the Court sets forth the applicable FCRA statutes.

First, 15 U.S.C. § 1681b(f) provides the following:

> A person[6] shall not use or obtain a consumer report for any purpose
> unless--
> (1) the consumer report is obtained for a purpose for which the
> consumer report is authorized to be furnished under this section; and
> (2) the purpose is certified . . . by a prospective user of the report . . . .

15 U.S.C. §1681b(f).

---

[5] By October 26, 2017, Mosaic had received a Florida State Attorney General inquiry regarding
Briant Katilus of Vivint.  (Doc. No. 126-28, p. 147).
[6] Pursuant to 15 U.S.C. § 1681a(b), a person is broadly defined to include both individuals and
corporations.

Second, § 1681b(a) sets forth permissible purposes for obtaining a consumer report, which include the following two situations relevant to this case:[7] (1) if a consumer gives permission to the person to obtain the consumer report (§ 1681b(a)(2)); or (2) the person seeking the consumer report has a legitimate business need for the information in connection with a business transaction that is initiated by the consumer (§ 1681b(a)(3)(F)).

Third, the penalties for using or obtaining a consumer report without authorization or a proper purpose depend on whether the person acted negligently or willfully. If a person acted negligently, that person is liable to the consumer for the consumer's actual damages, plus costs and attorneys' fees. 15 U.S.C. § 1681o(a). Conversely, if the person acted willfully, that person may be liable to the consumer for the following: (1) the consumer's actual damages, or statutory damages of not less than $100 or more than $1,000; (2) punitive damages; and (3) costs and attorneys' fees.[8] 15 U.S.C. § 1681n(a).

### A. Mosaic's Motion for Summary Judgment

Mosaic moves for summary judgment on the FCRA (Counts III and IX) and declaratory judgment (Counts VI and XII) claims asserted against it. Accordingly, the Court will address these claims.

---

[7] The Court notes that § 1681b(a)(3)(A) provides another permissible purpose for seeking a consumer report—when the person seeking the consumer report intends to use the information in connection with a credit transaction involving the extension of credit to the consumer. However, if a credit transaction *is not initiated by the consumer*, § 1681b(c)(1) provides that either: (1) the consumer authorize the furnishing of the consumer report, or (2) the transaction consists of a firm offer of credit. In this case, Defendants do not argue that Mosaic checked Plaintiffs' credit in connection with Mosaic providing a firm offer of credit. Instead, in this case, Defendants argue that either Plaintiffs' authorized the furnishing of their credit reports or they had applied for a loan from Mosaic (thus initiating a credit transaction).

[8] The Court need not separately address 15 U.S.C. § 1681q—which provides for fines and imprisonment for willfully obtaining information on a consumer from a consumer reporting agency under false pretenses—because any civil liability to Plaintiffs for such conduct in this case is already provided for by 15 U.S.C. § 1681b(f) and § 1681n(a).

### 1. FCRA Claims against Mosaic

Mosaic makes several arguments in support of its contention that it is not liable for Plaintiffs' FCRA claims. Accordingly, the Court will address each argument. However, as explained below, the Court finds that genuine issues of material fact exist that preclude summary judgment on Plaintiffs' FCRA claims against Mosaic.

### a. Permissible Purpose

Mosaic argues that it did not violate the FCRA by checking Plaintiffs' credit, because it had a permissible purpose to do so. Specifically, Mosaic argues that it received credit applications purporting to be from Plaintiffs, and the FCRA allows Mosaic to check Plaintiffs' credit in connection with a credit application (even if Mosaic did not obtain Plaintiffs' consent to run the credit checks). The flaw in this argument is that Plaintiffs have submitted evidence that they, themselves, did not apply for a loan with Mosaic nor did they authorize anyone else to do so for them. Instead, Plaintiffs contend that Vivint's salesmen applied for credit in Plaintiffs' names without Plaintiffs' knowledge or consent.

Next, Mosaic argues that even if Vivint's salespeople duplicitously applied for credit in Plaintiffs' names and without their knowledge or consent, Mosaic still did not violate the FCRA because *it reasonably believed* that it had a permissible purpose for checking Plaintiffs' credit— Mosaic contends that it reasonably believed that Plaintiffs themselves had applied for the loans. The law is somewhat unsettled regarding whether the reasonable belief standard applies to lenders facing liability under 15 U.S.C. § 1681b(f), as opposed to credit reporting agencies to which the FCRA specifically sets forth a reasonable belief standard in 15 U.S.C. § 1681b(a)(3). Mosaic has cited an unpublished Eleventh Circuit case in which the court does reference the reasonable belief standard in connection with a claim under 15 U.S.C. § 1681b(f). See

Middlebrooks v. Sacor Financial, Inc., 775 Fed. Appx. 594, 598 (11th Cir. 2019). Thus, for the purpose of this motion, the Court will assume that the reasonable belief standard applies.

In further support of this argument, Mosaic cites to the case of Glanton v. DirecTV, 172 F. Supp.3d 890 (D. S.C. 2016). In Glanton, the plaintiff alleged that he was a victim of identity theft, and the perpetrator caused the defendant to make an unauthorized inquiry into the plaintiff's credit. See id. at 892. The defendant moved to dismiss the plaintiff's FCRA claim, arguing that it had a permissible purpose for the credit check. See id.at 895. The court agreed with the defendant and stated that "there is no violation of Section 1618b when a creditor obtains a credit report due to an imposter's application for credit even though the identity theft victim did not make the application." Id. at 896 (citations omitted).

In the instant case, while Plaintiffs may have been victims of identity theft with respect to the loan applications to Mosaic, there is a genuine issue of fact regarding whether Mosaic knew or should have known that there was a possibility that the loan applications were not, in fact, submitted by Plaintiffs. There is evidence before the Court showing that Mosaic knew that there were problems with unauthorized credit checks caused by Vivint's salespeople, and it is for the jury to decide whether such evidence undercuts Mosaic's contention that it had a reasonable belief that it had a permissible purpose for checking Plaintiffs' credit.

### b.  False Pretenses

Next, Mosaic argues that it cannot be found liable for obtaining Plaintiffs' credit reports under false pretenses, because it was not present when the credit applications were submitted nor did it make any representations to Plaintiffs. Mosaic points out that Plaintiffs only interacted with Vivint's salesmen.

Mosaic and Plaintiffs disagree as to whether Vivint's salesmen were agents of Mosaic for the purpose of facilitating customers in obtaining, and submitting applications for, loans from Mosaic. Plaintiffs point out that Mosaic authorized Vivint and its salespeople to access Mosaic's loan products through Vivint's operating platform on its salespeople's iPads. A Mosaic phone representative told Brown that they allow Vivint's salespeople to submit credit applications on their iPads and that Mosaic has the ability to deactivate a salesperson's account if customers feel that the salesperson is being misleading. (Doc. No. 126-13, p. 5, 8).

Furthermore, Vivint and Mosaic have entered into an agreement whereby each benefit from their relationship. Specifically, Mosaic benefits from Vivint's salespeople selling solar panels and providing Mosaic's loan products to Vivant's customers, enabling Mosaic to obtain loan customers without a Mosaic representative being present during the sale. Likewise, Vivint benefits from their relationship, because Mosaic loans money to Vivint's customers to fund their solar panel purchases, allowing Vivint to make more sales.

Plaintiffs contend that if Vivint's salesmen were Mosaic's special agents for the purpose of facilitating customers in obtaining, and submitting applications for, loans from Mosaic, then the salesmen's knowledge—that they were facilitating Mosaic obtaining Plaintiffs' credit reports without permission, without a permissible purpose, and under false pretenses—could be imputed to Mosaic.[9] The Court cannot decide this agency issue on the record before it; whether a person is an agent of another is normally a question of fact for the jury to decide.[10] Amaro v. Certain Underwriters at Lloyd's London, 2019 WL 4722697, at *2 (S.D. Fla. July 31, 2019).

---

[9] Under Florida law and the Restatement (Third) of Agency § 5.03, "knowledge or notice that an agent acquires while acting within the course and scope of his authority is generally imputed to his principal." Dye v. Tamko Building Products, Inc., 908 F.3d 675, 685 (11th Cir. 2018).
[10] In this case, the parties simply cited case law for general propositions regarding agency. The parties did not cite to factually similar cases to support their arguments regarding an agency

### c. Damages

Next, Mosaic argues that Plaintiffs' FCRA claims fail, because they have not suffered any actual damages. Plaintiffs respond that they have suffered emotional distress. Damages for emotional distress can be awarded if there is a causal connection between the FCRA violation and the emotional harm. See Marchisio v. Carrington Mortgage Services, LLC, 919 F.3d 1288, 1304 (11th Cir. 2019).

Plaintiffs contend that they have suffered compensable emotional distress due to Defendants' conduct. Specifically, they feel violated, that their privacy has been invaded, worried that their credit information has been compromised, and angry that Defendants allowed their credit report to be accessed. (Doc. No. 126-1, ¶ 20-23; Doc. No. 126-2, ¶ 20-23; Doc. No. 126-19, depo. p. 158-59).

Brown had been trying to improve his credit prior to Mosaic's hard inquiry on his credit report, and he is angry that he had to make so many calls to get his credit report fixed. (Doc. No. 126-19, depo. p. 148-49, 163). Brown claims that his feelings cause his heart to race, body to tense up, and makes him be combative with the people around him. (Doc. No. 126-1, ¶23). Likewise, Cardona has been sleepless with worry and so nervous that she now suffers from digestive problems. (Doc. No. 126-2, ¶ 23; Doc. No. 126-18, depo. p. 34-35). Plaintiffs' spouses have observed how anxious and worried this situation has made Plaintiffs. (Doc. No. 126-7; Doc. No. 126-12).

---

relationship between Mosaic and Vivint's salesmen. When filing their joint pretrial statement, the parties are directed to each attach an addendum that briefs the agency issue in this case by citing to cases that are factually similar to this case. The addendums are limited to seven pages each, and the Vivint defendants are directed to jointly submit a single addendum.

In addition to suffering from emotional distress, Cardona has placed a fraud hold on all of her credit reports due to this situation. These fraud holds have cost Cardona $30 and will cost more to remove them. (Doc. No. 126-2, ¶ 19; Doc. No. 126-18, depo. p. 36).

Based on the above, the Court finds that Plaintiffs have submitted sufficient evidence to raise a genuine issue of material fact that they have suffered actual damages. Furthermore, if Plaintiffs prove that Defendants acted willfully, Plaintiffs are not required to prove actual damages and can seek statutory damages instead.

### 2. Declaratory Judgment Claims against Mosaic

Next, Mosaic argues that it is entitled to summary judgment on Plaintiffs' claims for declaratory relief under Florida's Declaratory Judgment Act, in which Plaintiffs ask the Court to declare that Mosaic's conduct violated the FCRA. Mosaic argues that because Plaintiffs' FCRA claims fail, there is nothing left for the Court to declare. This argument fails, as the Court has found that Plaintiffs have submitted sufficient evidence to pursue their FCRA claims at trial.

However, Vivint has made a meritorious argument that applies equally to Plaintiffs' claims against Vivint and Mosaic. Vivint argues that Plaintiffs' declaratory judgment claims brought under Florida's Declaratory Judgment Act are duplicative of Plaintiffs' FCRA claims and should not proceed. As explained below, the Court agrees and declines to exercise jurisdiction over these claims and dismisses them without prejudice.

This Court has discretion to determine whether to exercise jurisdiction over declaratory judgment claims. See Travelers Ins. Co. v. Emery, 579 So. 2d 798, 800 (Fla. 1st DCA 1991); see also Pierce v. State Farm Mutual Auto. Ins. Co., 2014 WL 7671718, at *5 n.7 (S.D. Fla. Dec. 17, 2014). The case of Aquadry Plus Corp. v. Rockhill Insurance Company, 2020 WL 927440 (S.D. Fla. Feb. 26, 2020), is instructive on this issue.

In <u>Aquadry</u>, the plaintiff had asserted two claims against the defendant insurer—breach of insurance contract and declaratory judgment. <u>See</u> <u>id.</u> at *1. The defendant filed a motion to dismiss the declaratory judgment claim, and the court granted the motion, stating the following:

> "[A] trial court should not entertain an action for declaratory judgment on issues which are properly raised in other counts of the pleadings and already before the court, through which the plaintiff will be able to secure full, adequate and complete relief." [The plaintiff] urges the Court to assess the adequacy of the declaratory judgment count according to Florida Statute § 86.101, the state's version of the Federal Declaratory Judgment Act. Although the statute provides that it is substantive law (Fla. Stat. § 86.101), it is a procedural mechanism that confers subject matter jurisdiction on Florida state courts. As a practical matter, the elements required under the federal or state declaratory-judgment acts are not materially different. . . .
>
> [The defendant] argues that [the plaintiff's] claim for declaratory relief should be dismissed as duplicative of the breach of contract claim. Declaratory judgment claims may coexist with breach of contract claims when they provide the plaintiff a form of relief unavailable under the breach of contract claim. Although, as [the plaintiff] argues, claims may be plead in the alternative under Rule 8(d) of the Federal Rules of Civil Procedure, neither defendants nor courts are obligated to contend with duplicative declaratory judgment claims. If the determination of [the plaintiff's] breach of contract claim involves the same factual dispute as the declaratory judgment claim, then the "Plaintiff will be able to secure full, adequate and complete relief through the breach of contract claim" and consequently "the declaratory action must be dismissed."
>
>           *     *     *
>
> [The plaintiff's] complaint is based on [the defendant's] alleged failure to pay an invoice for services that were rendered in the past. "[C]laims for declaratory judgment must look forward, rather than backward, as any retrospective declaratory judgment would be equally solved by resolution of the breach of contract claim." [The declaratory judgment claim] ultimately seeks a declaration that [the plaintiff's] reading of the insurance policy is correct and that it is entitled to recovery for its services rendered. The determination of [the plaintiff's] breach of contract claim will resolve this dispute and allow [the plaintiff] to secure complete relief. Accordingly, the Court grants [the defendant's] motion to dismiss [the plaintiff's] declaratory judgment claim.

Id. at *1-3 (internal citations omitted).  Thus, based on <u>Aquadry</u>, Plaintiffs' declaratory judgment

claims seeking a declaration that Defendants violated the FCRA is duplicative of their FCRA

claims.

Plaintiffs argue that declaratory relief is not duplicative, and is in fact necessary,

"because a jury could theoretically find no negligence or willfulness, which is a prerequisite" for

damages under the FCRA.  (Doc. No. 140, p. 18).  Thus, Plaintiffs argue, "the Court could still

conclude that Defendants used or obtained Plaintiffs' credit reports for an impermissible purpose

. . . and enter a declaratory judgment on the same."  (Doc. No. 140, p. 18).  It is not clear,

however, how such a declaratory judgment would be meaningful or necessary.  In this case, there

is no continuing relationship between Plaintiffs and Defendants, and as such, there is no need for

the Court to declare (if proven) that Defendants had violated the FCRA in the past.  Accordingly,

the Court declines to exercise jurisdiction over Plaintiffs' declaratory judgment claims and

dismisses them without prejudice.

### B.  Vivint's Motion for Summary Judgment

Vivint moves for summary judgment on the FCRA (Counts I, II, VII, and VIII) and

declaratory judgment (Counts IV, V, X, and XI) claims asserted against it. Accordingly, the

Court will address these claims.

### 1.  FCRA Claims against Vivint

Vivint makes several arguments in support of its contention that it is not liable for

Plaintiffs' FCRA claims.  Some of these arguments overlap with the arguments made by Mosaic

that were addressed above.  Only two of Vivint's arguments merit further analysis: (1) that

Vivint cannot be liable under the FCRA, because it did not pull, use, or obtain Plaintiffs' credit

reports; and (2) Plaintiffs fail to allege any facts that would support liability against Vivint Solar,

Inc. (the parent company), as opposed to Vivint Solar Developer, LLC.  As explained below, the

Court finds that genuine issues of material fact exist that preclude summary judgment on

Plaintiffs' FCRA claims against Vivint Solar, Inc. and Vivint Solar Developer, LLC.

### a.  Use or Obtain

Vivint argues that it cannot be liable under the FCRA, because it did not pull, use, or

obtain Plaintiffs' credit reports; instead, Mosaic did those acts.  As previously stated, the FCRA

provides that a person or entity "shall not use or obtain a consumer report" without a permissible

purpose.  15 U.S.C. §1681b(f).  In this case, it is undisputed that Mosaic pulled/obtained

Plaintiffs' credit reports and used them to evaluate Plaintiffs' credit.  Thus, Vivint argues that it

cannot be held liable for any FCRA violations.

There is sparse case law on the issue of whether a defendant can violate the FCRA by

causing an entity to use or obtain a credit report without a permissible purpose, when the

defendant did not use, see, or come into possession of the credit report.  The parties cited to no

case law specifically on this issue, and this Court has found only one such case on the issue,

Adams v. Phillips, 2002 WL 31886737 (E.D. La. 2002).

In Adams, Phillips impersonated Adams at three stores and caused the stores to obtain

credit reports on Adams that were used to open lines of credit in Adams' name.  See id. at *1.

Adams asserted an FCRA claim against Phillips for this conduct, and Adams' claim was tried

before a jury.  See id.  The jury found in favor of Adams on this claim, and Phillips moved for a

new trial, arguing that this conduct could not support an FCRA claim.  See id. at *1-2.  In

rejecting Phillips' argument, the court stated the following:

> Phillips argues that on December 12, 2001, he never "used" or
> "obtained" a consumer credit report on Adams as the terms are
> applied in the FCRA. He contends that at most, he caused the retail
> stores to obtain and use Adams' credit reports. Under Phillips'

interpretation of the FCRA, his actions do not violate any of the consumer protection provisions contained in the statutory scheme. As support, Phillips defines a "user" of a consumer credit report under the FCRA as "the ultimate destination of a credit report as well as the person who acquires (a credit report) for another."

The Court agrees that the term "user" includes both of these definitions. However, this is not an exclusive definition of user, nor does it fully define a person who "obtains" a credit report under the FCRA. . . . To have "used" or "obtained" a credit report under the FCRA, Phillips need not have personally requested the report from the reporting agency. It is enough that his deceitful and fraudulent conduct was the sole cause for issuance of Adams' credit reports to the retail stores. Phillips, in impersonating Adams, consented in the stores' request of Adams' reports from the reporting agency. The stores would never have obtained and used the reports absent consent and were it not for their belief that Phillips was Adams. By fraudulently requesting that the retail stores obtain the reports on Adams, Phillips "used" the reports in order to obtain a benefit, namely the lines of credit. . . . The Court thus concludes that Phillips' conduct satisfied the civil liability requirements under the FCRA.

Id. at *6-7 (internal citations omitted).

In the instant case, there is evidence that Coan and Martins, Vivint's employees, caused Mosaic to obtain and use Plaintiffs' credit reports. As stated in Adams, "[i]t is enough that [their] deceitful and fraudulent conduct was the sole cause for issuance of [Plaintiffs'] credit reports to [Mosaic]." By causing Mosaic to obtain these credit reports, Coan and Martins "used" the credit reports to obtain a benefit, namely they tried to use these credit reports to qualify Plaintiffs as accounts that counted towards Vivint's "accounts opened" sales goal.

Furthermore, Coan and Martins were Vivint's employees acting in the course and scope of their employment when they allegedly submitted Plaintiffs' credit applications to Mosaic without Plaintiffs' consent or authorization. Thus, Vivint can be held liable for their conduct. See Reed v. CRST Van Expedited, Inc., 2018 WL 3954868, at *3 (M.D. Fla. Aug. 16,

17

2018)(noting that employers can be held liable for FCRA violations committed by their

employees).  Accordingly, the Court denies Vivint's motion for summary judgment on this issue.

### b.  Vivint Solar, Inc.'s Liability

Plaintiffs assert FCRA claims against both Vivint Solar, Inc. ("VSI"), as well as Vivint

Solar Developer, LLC ("VSD").  VSI contends that it is merely the parent company of VSD, that

VSD is the company that sells solar panels in Florida and employed the door-to-door salesmen,

and therefore, VSI cannot be held liable in this case.  (Doc. No. 67, p. 21).  In support of this

contention, Vivint cites to pages 16-19 of Briant Katilus' deposition, which does not address

Vivint's contention.[11]  (Doc. No. 67-15, depo. p. 16-19).  Vivint also cites to its "Certificate of

Interested Persons" related to this case, and it identifies both VSI and VSD as entities that may

have an interest in the outcome of this case.  (Doc. No. 7, p. 1).  That reference also does not

support Vivint's contention that VSI cannot be liable.

Plaintiffs respond by pointing to one of VSI's SEC filings—its 2017 Annual Report,

Form 10-K.[12]  In that filing, VSI states the following:

> We offer distributed solar energy . . . to residential customers
> primarily through a customer-focused and neighborhood-driven
> direct-to-home sales model. . . . We deploy our sales force on a
> neighborhood-by-neighborhood basis, which allows us to cultivate
> a geographically concentrated customer base that reduces our costs
> and increases our operating efficiency.
>
> *          *          *
>
> Historically, our primary sales channel has been a direct sales
> model. We also sell to customers through our inside sales team but
> continue to find greatest success using our direct sales channel. In
> addition, we recently began to establish a retail sales channel and

---

[11] It appears that Vivint may have meant to refer to the deposition of Evan Pack, which has not
been filed on the public docket; there is currently a motion to seal directed at it.  (Doc. No. 123).
[12] https://investors.vivintsolar.com/company/investors/financial-information/sec-filings/2018/default.aspx (last accessed March 21, 2020).

> entered into sales dealer agreements with Vivint [Inc.] and others.[13]
> . . . We are highly dependent on our ability to attract, train and retain
> an effective sales force. The success of our direct-selling channel
> efforts depends upon the recruitment, retention and motivation of a
> large number of sales personnel to compensate for a high turnover
> rate among sales personnel, which is a common characteristic of a
> direct-selling business. In order to grow our business, we need to
> recruit, train and retain sales personnel on a continuing basis.

2017 Annual Report, p. 2, 17. Thus, Plaintiffs contend that this shows that VSI has an employment relationship with the door-to-door salesmen. Additionally, Plaintiffs point to Coan and Martins' employment agreements, which state the following:

> Congratulations! Vivint Solar, Inc. its subsidiaries, or affiliates
> [collectively referred to as "Vivint Solar", the "Company" or "we"]
> is pleased to offer you the position of C1004 – Solar Sales Manager,
> reporting to . . . ,[14] Vivint Solar, Inc. . . .

(Doc. No. [144])(brackets in original).

The Court agrees that Plaintiffs have raised a genuine issue of material fact regarding the existence of an employment relationship between VSI and the salesmen whose conduct forms the basis of Plaintiffs' claims. As such, the Court denies Vivint's motion that VSI cannot be held liable.

### 2.  Declaratory Judgment Claims against Vivint

Next, Vivint argues that it is entitled to summary judgment on Plaintiffs' claims for declaratory relief, in which Plaintiffs ask the Court to declare that Vivint's conduct violated the FCRA. For the reasons discussed above with respect to Mosaic's motion directed to these

---

[13] On page 1 of this filing, VSI defines references to "Vivint" to mean "Vivint, Inc." It is not clear how, or if, Vivint, Inc. is related to VSI and VSD.

[14] The employment agreements state that Coan reported to Jordan Laplace, and Martins reported to Briant Katilus. (Doc. No. [144]).

claims, the Court declines to exercise jurisdiction over these claims and dismisses them without prejudice.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)     Vivint's Motion for Summary Judgment (Doc. No. 67) is **DENIED** as to Plaintiffs' FCRA claims.  The Court declines to exercise jurisdiction over Plaintiffs' declaratory judgment claims against Vivint and dismisses those claims without prejudice.

(2)     Mosaic's Motion for Summary Judgment (Doc. No. 70) is **DENIED** as to Plaintiffs' FCRA claims.  The Court declines to exercise jurisdiction over Plaintiffs' declaratory judgment claims against Mosaic and dismisses those claims without prejudice.

(3)     Mosaic's Motion for Leave to File Reply Brief (Doc. No. 128) is **DENIED**.

(4)     The parties are directed to each attach an addendum to the pretrial statement that briefs the agency issue in this case by citing to cases that are factually similar to this case.  Mosaic shall file an addendum; the Vivint defendants are directed to jointly file a single addendum; and Plaintiff are directed to jointly file a single addendum.  The addendums are limited to seven pages each.

(5)     All pretrial motions, including all motions in limine, must be filed by *April 6, 2020*. Each party may file *one* motion in limine containing all of their arguments in a single document not to exceed 25 pages.  Responses thereto must be filed by *April 20, 2020*.

DONE AND ORDERED at Tampa, Florida, this 23rd day of March, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record