UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERARD BROWN and
ELIZABETH CARDONA,

    Plaintiffs,

v.                                      Case No. 8:18-cv-2838-T-24 JSS

VIVINT SOLAR, INC., ET AL.,

    Defendants.
_____/

## ORDER

This cause comes before the Court on Vivint's Motion to Exclude Expert Witness Report and Testimony (Doc. No. 68), in which Mosaic joins (Doc. No. 69). Plaintiffs oppose the motion. (Doc. No. 82). As explained below, the motion is granted in part and denied in part.

## I. Background

Plaintiffs Jerard Brown and Elizabeth Cardona bring this lawsuit alleging violations of the Fair Credit Reporting Act ("FCRA") by Defendants. Defendant Vivint Solar, Inc. is the parent company of Defendant Vivint Solar Developer, LLC (collectively referred to as "Vivint"), and they sell solar panels. Defendant Solar Mosaic, Inc. ("Mosaic") is a financing company that finances solar energy systems.

Vivint's door-to-door salesmen go to potential customers' houses to attempt to sell Vivint's solar panels. These salesmen have iPads with them, on which a potential customer can access Mosaic's online credit application to apply for financing for the purchase of Vivant's solar panels. Plaintiffs contend that Vivint's salesmen came to their houses and completed Mosaic's online credit application in Plaintiffs' names without Plaintiffs' knowledge or consent. Thus, Plaintiffs contend that all three defendants acted together through Vivint's door-to-door salesmen to obtain Plaintiffs' credit reports under false pretenses and without any permissible purpose or authorization.

Plaintiffs intend to call Evan Hendricks at trial to provide expert testimony regarding the FCRA, Defendants' compliance with the FCRA, and the damages that can be expected to result from non-compliance. Defendants ask the Court to exclude Hendricks from testifying at trial regarding the opinions that he expressed in his expert report.[1] Defendants contend that Hendricks' expert testimony does not meet the stringent requirements of Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 597 (1993).

## II. Standard of Review

This Court performs "a gatekeeping role" regarding admissibility of expert testimony. See Daubert, 509 U.S. at 597. Federal Rule of Evidence 702 provides the following:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

FRE 702. The proponent of the expert testimony has the burden of showing, by a preponderance of the evidence, that the testimony satisfies each of the following prongs:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Hendrix ex rel G.P. v. Evenflo Co., 609 F.3d 1183, 1994 (11th Cir. 2010).

---

[1] Hendricks' expert report can be found at Document Number 126-15.

### III. Motion to Exclude Expert Witness

In the instant motion, Defendants ask the Court to exclude Hendricks from testifying at trial, because: (1) Hendricks is not qualified to opine on all of the issues he intends to testify about; (2) his opinions are not based on sound methodology; and (3) his testimony will not assist the jury. Accordingly, the Court will address each argument.

#### A. Qualifications

Defendants argue that Hendricks is not qualified to opine on all of the issues he intends to testify about. Hendricks' qualifications include 33 years studying and publishing on credit reporting issues. He has also written a book on credit reports, as well as testified as an expert witness in many state and federal FCRA cases. He has also testified before Congress on many occasions as an expert on credit reporting.

The Eleventh Circuit has stated the following regarding experts being qualified based on their experience:

> [E]xperts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status. In fact, the plain language of Rule 702 makes this clear: expert status may be based on "knowledge, skill, experience, training, or education." . . . The Committee Note to the 2000 Amendments of Rule 702 also explains that "[n]othing in this amendment is intended to suggest that experience alone ... may not provide a sufficient foundation for expert testimony." . . . [T]he Committee Note to the 2000 Amendments of Rule 702 expressly says that, "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

U.S. v. Frazier, 387 F.3d 1244, 1260-61 (11th Cir. 2004).

Based on the above, Hendricks is qualified to testify about the FCRA generally and credit reporting issues. Defendants contend that he is not qualified to testify regarding Defendants' management of their employees, as well as Defendants' training, policies, or procedures. Plaintiffs respond that Hendricks is qualified to opine about Defendants' policies and procedures for preventing unauthorized privacy invasions. The Court agrees with Plaintiffs that to the extent that Hendricks opines regarding the industry standards for preventing privacy invasions, as well as comparing Defendants' conduct to industry standards, such is within his experience and expertise, such that he is qualified to render such opinions. See Williams v. First Advantage LNS Screening Solutions Inc., 2015 WL 9690018, at *2 (N.D. Fla. Mar. 31, 2015)(concluding that "Hendricks' experience qualified him as an expert on consumer reports . . . and industry standards pertaining to FCRA compliance"); McDonough v. JPMorgan Chase Bank, N.A., 2016 WL 4944099, at *2 (E.D. Mo. Sept. 30, 2016)(finding that Hendricks' experience qualified him to testify regarding standard credit reporting policies and procedures).

Defendants also content that Hendricks is not qualified to opine regarding Plaintiffs' damages or the emotional and physical damages that generally arise from FCRA violations. Plaintiffs respond that Hendricks is qualified to testify regarding the emotional and physical damages that can arise from a consumer's loss of control over their private information, because he has studied this issue for more than 30 years.

The Court agrees with Defendants that Hendricks is not qualified to opine regarding Plaintiffs' emotional or physical damages or the emotional and physical damages that generally arise from FCRA violations. See Malverty v. Equifax Information Services, LLC, 2019 WL 5549146, at *2 (M.D. Fla. Oct. 28, 2019)(concluding that Hendricks could not testify regarding the plaintiff's emotional damages, nor could Hendricks testify regarding the types of damages that are common to

people in comparable situations); McDonough, 2016 WL 4944099, at *3 (finding that Hendricks could not opine regarding the types of damages that are common to people in comparable situations). Accordingly, the Court grants Defendants' motion to the extent that Hendricks may not opine regarding Plaintiffs' emotional or physical damages or the emotional and physical damages that generally arise from FCRA violations.[2]

### B. Methodology

Next, Defendants argue that Hendricks' opinions are not based on reliably sound methodology. Defendants contend that Hendricks has no specialized knowledge to support his opinions, and instead, he is simply a pro-plaintiff FCRA advocate that makes a living testifying against defendants in FCRA cases.

The Eleventh Circuit has stated the following regarding the evaluation of non-scientific, experience-based expert testimony:

> Sometimes the specific Daubert factors will aid in determining reliability; sometimes other questions may be more useful. As a result, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Exactly how reliability is evaluated may vary from case to case, but what remains constant is the requirement that the trial judge evaluate the reliability of the testimony before allowing its admission at trial.

Frazier, 387 F.3d at 1262 (internal citations omitted).

Plaintiff responds that Hendricks' extensive experience studying and publishing on FCRA issues provides a sufficient methodology to support his opinions. As explained by one court:

> "As a prerequisite to making the Rule 702 determination that an expert's methods are reliable, the court must assure that the methods are adequately explained." There must be a connection between the

---

[2] Hendricks is permitted to testify regarding the damage to a person's credit report that may be caused by a hard inquiry, as well as the risk of identity theft that can result from unauthorized access.

> witness' knowledge and the particular conclusions drawn. Hendricks will opine on the reasonableness of [the defendant's] actions and/or inactions. His testimony is based on his experience and research in FCRA matters. Thus, his method is simply an application of his experience with and understanding of the FCRA and the credit reporting industry to the facts at hand. Although his methods are not meticulously detailed for every conclusion, they can be understood and are reliable. Moreover, "shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."

Valenzuela v. Equifax Information Services LLC, 2015 WL 6811585, at *2 (D. Ariz. Nov. 6, 2015)(internal citations omitted); see also Ma v. Equifax Information Services, LLC, 288 F. Supp.3d 1360, 1366-67 (N.D. Ga. 2017)(finding that Hendricks' methods were sufficiently reliable and that the defendant's objections went towards weight rather than admissibility).

In the instant case, the Court agrees with Plaintiffs and finds that Hendricks' extensive experience studying and publishing on FCRA issues provides a sufficient methodology to support his opinions. Accordingly, the Court denies Defendants' motion on this issue.

### C. Assisting the Jury

Next, Defendants argue that Hendricks' testimony will not assist the jury in understanding the evidence or determining a fact in issue. The Eleventh Circuit has stated the following when explaining the requirement that expert testimony must assist the trier of fact:

> [E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.

Frazier, 387 F.3d at 1262-63 (internal citations omitted).

Defendants contend that many of Hendricks' opinions: (1) are common sense observations that the jury is capable of making on their own; (2) consist of speculation regarding Defendants'

motive, knowledge, and intent; and (3) are improper legal conclusions. There is some merit to this argument, as explained below.

In the "Summary of Opinions" section of the expert report, Hendricks sets forth ten opinions. The first two opinions—regarding hard inquiries and their effect on a credit file—are permissible opinions that will aid the jury in understanding this case. The third, fourth, fifth, and sixth opinions—that unauthorized access to credit information causes profound harm; that continued complaints to the Better Business Bureau and the police show Defendants' lack of concern about customer privacy; and that Defendants' sales quotas incentivize the salesman to access credit reports without consent—are conclusions that that the jury may or may not come to, but they do not need Hendricks' opinion on these matters. Furthermore, Hendricks cannot opine as to Defendants' motives, intent, or state of mind. See Valenzuela, 2015 WL 6811585, at *3; Anderson v. Equifax Information Services, LLC, 2018 WL 1542322, at *5 (D. Kan. Mar. 29, 2018).

The seventh, eighth, and ninth opinions—that the salesmen obtained information about potential customers without the customers' knowledge and that the salesmen used that information to fill out credit applications and Prospective Consumer Consent Forms ("PCCFs") to initiate a credit inquiry—is speculation. It has not been determined that the salesmen did, in fact, have access to such information and did, in fact, use that information to fill out credit applications and PCCFs. If Plaintiffs present evidence at trial that the salesmen did, in fact, have access to the information required to fill out credit applications and PCCFs, then Hendricks can opine that it was possible for the salesmen to fill out credit applications and PCCFs without obtaining the information from customers. However, at this point, Hendricks' opinions are based on speculation.

Hendricks' tenth opinion is that Defendants lacked an adequate regime to prevent the unauthorized access to Plaintiffs' credit reports. Hendricks may testify regarding the industry

standards for preventing unauthorized access, whether Defendants' procedures complied with industry standards, and he can identify other measures that Defendants could have taken to prevent the unauthorize access to Plaintiffs' credit reports. See Malverty, 2019 WL 5549146, at *2; Zabriskie v. Federal National Mortgage Assoc., 2016 WL 3653512, at *2 (D. Ariz. Apr. 22, 2016); Williams, 2015 WL 9690018, at *3-4; McDonough, 2016 WL 4944099, at *2; Anderson, 2018 WL 1542322, at *6. However, Hendricks may not specifically state that he believes that Defendants' procedures are inadequate, that Defendants are at fault for the alleged unauthorized access to Plaintiffs' credit reports, or that Defendants violated the FCRA—those are determinations to be made by the jury. See Malverty, 2019 WL 5549146, at *3; Zabriskie, 2016 WL 3653512, at *2; Williams, 2015 WL 9690018, at *3; McDonough, 2016 WL 4944099, at *3; Anderson, 2018 WL 1542322, at *6.

Additionally, the Court finds that Hendricks cannot testify regarding certain other portions of his expert report. In his expert report, Hendricks provides a lot of legal history and background for the FCRA that will not aid the jury. See Williams, 2015 WL 9690018, at *4 (limiting Hendricks' testimony regarding the history of the FCRA[3]). For example, Hendricks may not testify about, or cite to, the following: (1) case law to describe privacy rights (page 4); (2) the historical background of the FCRA and Congressional findings (pages 5-6); and (3) FTC staff opinions (page 7). However, Hendricks may provide background and context regarding the FCRA today.

It is also unnecessary for Hendricks to testify regarding the history of privacy rights. Therefore, Hendricks will be precluded from testifying as to the matters set forth in his discussions of the "Relevant Privacy History and Standards" (pages 9-12), as well as the "Invasion of Plaintiffs' Privacy" (page 12).

---

[3] The Williams court referred to the FCPA, but that appear to be a typo.

**IV. Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Defendants' Motion to Exclude Expert Witness Report and Testimony (Doc. No. 68, 69) is **GRANTED IN PART AND DENIED IN PART** as set forth above.

DONE AND ORDERED at Tampa, Florida, this 26th day of March, 2020.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record