## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | | |
|---|---|---|
| ELIZABETH CARDONA and | : | |
| JERARD BROWN, | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.:   18-cv-02838-SCB-JSS |
| | : | |
| VIVINT SOLAR, INC., | : | |
| VIVINT SOLAR DEVELOPER, LLC, and | : | |
| SOLAR MOSAIC, INC., | : | |
| Defendants. | : | |

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## VIVINT DEFENDANTS' MOTIONS *IN LIMINE* (ECF 158)

### I.       INTRODUCTION

Defendants Vivint Solar, Inc. and Vivint Solar Developer, LLC (collectively "Vivint")

move *in limine* to exclude a host of highly relevant evidence, including evidence that would show

that Vivint fostered a business model that ultimately encouraged its sales agents to pull Plaintiffs'

credit reports without consent or a permissible purpose.  Vivint's broad motion seeks exclusion of

several categories of probative evidence that plaintiffs previously proffered and this Court deemed

relevant in denying Defendants' motions for summary judgment.   Vivint's arguments are

meritless, and its motion should be denied.

### II.       STANDARD FOR MOTIONS *IN LIMINE*

"Motions *in limine* are disfavored; admissibility questions should be ruled upon as they

arise at trial." *Stewart v. Hooters of Am., Inc.*, No. 8:04-CV-40-T-17-MAP, 2007 WL 1752873, at

*1 (M.D. Fla. June 18, 2007).  "A court has the power to exclude evidence *in limine* only when

evidence is clearly inadmissible on all potential grounds." *Id.* (citing *Luce v. United States*, 469

U.S. 38, 41 (1984)). In other words, such evidence must be "clearly inadmissible for any purpose."

*Id.* For this reason, courts often defer evidentiary rulings "until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *Id.* (emphasis omitted).

"When confronted with a broad motion *in limine*, therefore, the 'better practice is to deal with questions of admissibility of evidence as they arise' during the trial." *Whidden v. Roberts*, No. 5:19-CV-80, 2020 WL 605061, at *2 (N.D. Fla. Jan. 28, 2020) (quoting *Sperberg v. The Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

Additionally, "[a] motion *in limine* is not a permissible substitute for a motion for summary judgment." *Whidden*, 2020 WL 605061, at *3 (citing 21 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 5037.18 (motions *in limine* should not be used "as a substitute for a motion for summary judgment or other peremptory ruling in civil cases")); *see also Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 871 (W.D. Mich. 2008) (collecting cases).

## III.    LEGAL ARGUMENT

### 1.   The other complaints evidence – against these sales agents, and against Defendants generally – necessarily overlaps with the inquiry about whether there was consent or not.

Vivint argues in a motion *in limine* (ECF 158) and a separate motion to bifurcate (ECF 159) that this case is so complex that the jury will not be able to divorce the question of whether Cardona and Brown gave consent from the numerous other instances where consumers placed Defendants on notice of impermissible credit pulls within their organizations. This argument is meritless. First, the other complaints evidence overlaps with the liability issues and cannot easily be separated; *e.g.* (a) the very salesmen at issue here have other similar complaints against them, damaging their credibility, and (b) other complaints in Florida and elsewhere demonstrate Vivint's knowledge of the flaw in relying on (i) its fraud-prone Prospective Customer Consent Form ("PCCF") regime and (ii) outdated policies and procedures. Second, Vivint glosses over that

2

Plaintiffs must prove the violation was reckless or willful; other complaints are relevant to both Defendants' notice, opportunity, knowledge, and lack of mistake under Federal Rule of Evidence 404(b).

### a. Inextricable overlap with liability and credibility determinations.

#### i. Vivint's reliance on the PCCF requires discussion of pattern evidence.

Defendants point to Vivint's PCCF document as some evidence of consent. They will also argue that Vivint's policies and procedures are sufficient to keep salesmen from committing fraud. The legion of complaints in Florida and elsewhere (that Vivint seeks to exclude) demonstrates otherwise.

Plaintiffs are entitled to show how the electronic PCCF is flawed. Vivint will testify how the PCCF debuted in January 2016 with the rollout of Vivint's iPad-based NEO operating system, which placed easily manipulable electronic form documents in the hands of the company's sales staff. Almost immediately, the complaints of fraud, forgery, and impermissible credit pulls rolled into Vivint. Plaintiffs will elicit testimony about consumer Christine Droney from New Jersey, who, in January 2016 submitted a police report, FTC complaint, and BBB complaint alleging her credit was pulled without consent by a Vivint salesman named Jeremy O'Dell; Vasu Pulipati from California, who, in February 2016, made the same complaint about salesman Matt Lestarge transmitted to Vivint via BBB; Doug Littlejohn of New Jersey, who in March 2016, made the same complaint in recorded phone calls to Vivint, when a PCCF was forged by a sales manager named Philip Chamberlain. These are all disclosed witnesses. (Ex. 1, Plaintiffs' Rule 26 Disclosures).

Plaintiffs will also call Jane Driggs from the Utah BBB who will testify how these complaints, transmitted to Vivint, continued well into 2018. (ECF 126-6, Driggs dep. at p. 14:01–10). Despite all these complaints, Vivint chose to stick with the flawed PCCF regime, leading to

the credit pulls on Plaintiffs in January and September 2017.

The complaints about credit pulls without consent demonstrate the unreliability of the PCCF, which can be completed solely by the salesman.  Moreover, Vivint never changed its policies to adequately train salesmen not to commit fraud on these devices.  Vivint will argue its policies and procedures and training to sales staff indicate that Coan and Martins did things by the book here, but the sheer volume of complaints demonstrate those policies did not work and were flawed themselves.  In the words of Plaintiffs' expert, Defendants "placed manipulable electronic forms in the hands of their agents, who were motivated to make a sale, and failed to establish policies to curb the potential for abuse." (ECF 82-2, Plaintiff's Expert Report of Evan Hendricks).  Other complaints are admissible and inextricably intertwined with the question of liability.

### ii.    Impeachment with specific instances of conduct is allowed.

Vivint says this is a "he said, she said" case about whether consent was given in each instance, where the "jury must independently decide who they believe." (Def. br. at p. 4).  At trial, Defendants will urge the jury to believe the testimony of salesmen Ricardo Martins and Mitchell Coan over the testimony of Plaintiffs.  Those salesmen will say they would never forge or pull credit without consent, did not know it could be done, needed the consumer's SSN, etc.  Plaintiffs will challenge each salesman's credibility by cross examination, e.g. by demonstrating how both men said in their depositions they never heard about Vivint salesmen pulling credit without consent or forging signatures.  (ECF 67-2, Martins depo. at pp. 27, 58–59; ECF 67-3, Coan depo. at pp. 35–36).  Indeed, both had been accused of that very thing on at least one other occasion.  For example:

- On or around February 17, 2017 (three weeks after the Cardona credit pull), a consumer named Yoralma Vasquez complained to Mosaic, which in turn reported to Vivint that Ricardo Martins "impersonated the customer in some manner or

forged/falsified customer signatures," "ran credit on salesperson's device *with homeowner consent* (on-screen or via email) without homeowner having full control of the device through collecting info and acknowledging disclosures," and used an incorrect email address.  Mosaic made a "Final Ruling: Fraud … Borrower did not authorize this credit pull."  (ECF 135-1, SM 428–31).

- On May 29, 2017, four months before Vivint's Coan pulled Brown's credit, James Hing called Mosaic to complain that Mitchell Coan came to his door, and "was not told his credit will be run and that it will be a hard pull."  Mosaic forwarded the complaint to Vivint, giving Vivint specific knowledge that Coan may be doing this.  (ECF 135-1, SM 477–79).  On October 11, 2017, Brian Cottmeyer – who lives across the street from Jerard Brown, complained in a recorded phone call that Coan pulled his credit without consent, and without his social security number.  (ECF 135-1, SM 627–29).

Federal Rule of Evidence 608(b) permits a party to attack a witness's character for truthfulness by inquiring about specific instances of conduct on cross examination if the Court determines that "they are probative of the character for truthfulness or untruthfulness." *MasForce Europe, BVBA v. MEC3 Co.*, 2013 WL 12156469, at *3 (M.D. Fla. Dec. 4, 2013).  Under Federal Rule of Evidence 608(b), Plaintiffs may inquire about these specific instances of similar conduct to attack the credibility of these salesmen.  Each of these complaints exchanged between the co-defendants belie the salesmen's account of what they claim happened.  Like Rule 404(b), the witnesses' credibility is but one example of how pattern evidence is inextricably intertwined with the liability question.

### b.  Negligence and recklessness

#### i.  Plaintiffs' proofs are aided by pattern and practice evidence.

Plaintiffs must demonstrate that Defendants' violations were either negligent or willful. 15 U.S.C. §§ 1681o(a), 1681n(a).  The Supreme Court has held that "reckless disregard of a requirement of FCRA would qualify as a willful violation within the meaning of § 1681n(a)." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 71 (2007).  In this case, a determination that Defendants

failed to comply with the requirements of the FCRA is probative to whether their action in the same regard was negligent or reckless.

Willfulness can be shown by failing to develop a procedure to prevent future violations, or by failing to follow established procedures despite the "known risk of violating the FCRA." *Williams v. First Advantage LNS Screening Sols. Inc*, 947 F.3d 735, 745–46 (11th Cir. 2020); *see also Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1323 (11th Cir. 2007) (willful violation may be found when defendant "disregarded the very 'possibility' that it was violating the statute"). The Eleventh Circuit has held: "Evidence of similar occurrences may be offered to show a defendant's notice of a particular defect or danger … [or] the defendant's ability to correct a known defect." *Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 650 (11th Cir. 1990).

Additionally, and particular to the FCRA, courts require *inter alia* "evidence that other individuals had lodged complaints similar to the plaintiff's." *Smith v. LexisNexis Screening Sols., Inc.*, 837 F.3d 604, 611 (6th Cir. 2016). Courts have vacated FCRA jury willfulness verdicts for lack of such evidence. *Id.* (vacating verdict). In *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 418 (4th Cir. 2001) the court of appeals found no willfulness in part because "[t]here is no evidence that other consumers have lodged complaints similar to Dalton's against [defendant]." Vivint does not even cite this FCRA jurisprudence.

Once a company is on notice of a problem, whether because of consumer complaints or otherwise, willfulness may be established by its failure to address the problem. *See id.* Other complaints – about these specific salesmen and about Vivint salesmen generally – put both the salesmen and Vivint on notice of problems – that there was the ability to use the electronic PCCFs to request credit reports without consumer involvement, to fudge email addresses to hide the

6

evidence, and to forge signatures. Despite this notice, Defendants and their agents acted intentionally and recklessly by choosing to ignore the pattern of abuse and fraud enabled by their chosen door-to-door sales methods and policies.

### ii.    Other bad acts are relevant and admissible

Vivint selectively cites Federal Rule of Evidence 404(a)-(b) for the proposition that prior bad acts evidence should be excluded. But Vivint omits the rest of that rule, which provides: "evidence may be admissible for <u>another purpose</u>, <u>such as proving motive, opportunity, intent,</u> <u>preparation, plan, knowledge, identity, absence of mistake, or lack of accident</u>." Fed. R. Evid. 404(b) (emphasis added). The rule is "one of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity. The list provided by the rule is not exhaustive and the range of relevancy outside the ban is almost infinite." *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008).

Rule 404(b) often comes into play in criminal cases, where evidence of prior bad acts for similar uncharged criminal conduct is admitted as evidence of motive, intent, or absence of mistake. As explained by the former Fifth Circuit, in cases where state of mind is at issue, "the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses." *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978).[1] As explained by one court in the context of a fraud claim:

> The reason for allowing such evidence [of other frauds] is clear. The perpetrator of fraud is, most often, the sole possessor of actual knowledge of such fraud. Great latitude is thus allowed in admitting evidence on the issue of alleged fraud and undue restriction should not be placed on the introduction of evidence which has probative value, however slight, on this issue. Also, since present intent not to perform a future act is difficult to prove by direct evidence of a defendant's state of mind, a plaintiff may meet this burden by

---

[1]    *Beechum* is precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981).

circumstantial evidence.

*In re Cornner*, 191 B.R. 214, 228 n.10 (Bankr. N.D. Ala. 1995) (citations omitted).  For example, in *United States v. Brown*, 665 F.3d 1239 (11th Cir. 2011)—a criminal prosecution for forged checks—evidence of other forged checks was deemed relevant to intent and absence of mistake. *Id.* at 1248.  Evidence of similar fraudulent acts have also been admitted in civil fraud cases. *See, e.g.*, *Jones v. Childers*, 18 F.3d 899, 913 (11th Cir. 1994) (in civil RICO fraud case, evidence of similar fraud perpetrated on third parties relevant to motive, opportunity, intent, preparation, plan, knowledge, identity and absence of mistake or accident).[2]

As this Court recognized in its summary judgment opinion, the other complaints are relevant to Defendants' notice or knowledge of a problem with impermissible pulls: "Plaintiffs submitted evidence of Vivint and Mosaic's <u>knowledge</u> that many people had been complaining about unauthorized credit inquiries…"  (ECF 145 at p. 5, emphasis added).  Evidence deemed probative in establishing a genuine issue for trial should not be withheld from the trial jury.

In addition to knowledge and notice, almost all the Rule 404(b)(2) non-propensity purposes are present here, demonstrating the relevance and probative nature of other complaints.  At trial, Vivint's agents (the salesmen Martins and Coan) will argue *inter alia* they had no motive to pull credit because they do not get a commission until installation, that the opportunity wasn't there because they needed the consumer's SSN, that they didn't intend to pull without consent or that Brown and Cardona knew they were giving consent or that the pull was a mistake, etc.  Other

---

[2]        In the criminal context, the Eleventh Circuit allows the admission of prior bad acts if they pass this three-part test: "(1) the evidence must be relevant to an issue other than defendant's character; (2) the probative value must not be substantially outweighed by its undue prejudice; (3) the government must offer sufficient proof so that the jury could find that defendant committed the act." *Ellisor*, 522 F.3d at 1267.  When the purpose of the evidence is to show intent, courts look to "the overall similarity of the extrinsic [evidence] and the [misconduct alleged] and the closeness or remoteness in time" between the two. *Id.* at 1268.  However, "similarity is not required when the [extrinsic evidence] is introduced to show motive." *Beechum*, 582 F.2d at 912 n.15.  Nor is similarity required when the purpose is to show knowledge. *Id.*  In other words, the probative value of such evidence necessarily depends on the context. *Id.*

complaints would be admitted to address all these arguments, and show their modus operandi – they did it before, knew it could be done on their iPads (without SSNs), and knew they could get away with it without any meaningful consequence.   In other words, the existence of other fraud/impermissible pull complaints against Martins and Coan—coupled with Vivint's failure to discipline them for this misconduct—shows that these salesmen knew that they would continue to have the opportunity to accelerate the sales process by impermissibly reviewing credit eligibility without consent.  These prior complaints and Vivint's failure to address them likewise demonstrate that the salesmen and Vivint were primarily motivated to make sales, even at the expense of violating established consumer privacy rights and committing a federal crime. 15 U.S.C. §1681q (obtaining a consumer report by false pretenses punishable by jail and fine).

For these reasons, Vivint's hearsay objection is similarly misplaced. To the extent Plaintiffs will proffer the live testimony of other consumer victims, such testimony is not hearsay because it is an in-court statement.  Fed. R. Evid.  801(c).   To the extent these complaints are reflected in out-of-court statements, Plaintiffs are not offering the complaints *for their truth*, but for notice and the other purposes listed above.  In that context, it does not matter if the other complainants were right or wrong with their complaints, but that the complaints were made, putting Vivint on notice.

Vivint is free to argue to the jury the other complaints are false, unsupported, and unbelievable, but the complaints and Vivint's position toward them would still be relevant to show that Vivint "disregarded the very 'possibility' that it was violating the statute." *Allen*, 495 F.3d at 1323.  Indeed, Vivint's corporate designee has testified and likely will testify that Vivint takes complaints "very seriously," but that position is seriously undermined by the ongoing complaints and Vivint's failure to take meaningful action to address or prevent them.

Federal Rule of Evidence 403 permits a court to exclude otherwise relevant evidence if its

"probative value is substantially outweighed by a danger of . . . unfair prejudice." Vivint has established neither that the evidence would be "substantially outweighed" nor that any prejudice would be "unfair."  In this "he said, she said" case, the fact that other consumers said the same thing as Plaintiffs is undoubtedly probative of Coan's and Martins' credibility, as well as Vivint's reckless decisions that enabled these salesmen to pull Plaintiffs' credit reports without consent despite having notice of a serious problem.  Any alleged unfairness can be mitigated by Coan's and Martins' testimony contradicting complaints against them, the cross examinations of the consumer witnesses providing live testimony, or an appropriate limiting instruction.

2. **The Court's Discovery Order—limiting the scope of discovery from Defendants on proportionality grounds—did not prospectively limit the scope of relevant evidence at trial.**

Defendants all contend that the Court's discovery order prospectively limited the scope of relevant evidence at trial.  This is not so.

First, this Court's reasoned decision to limit discovery was based on proportionality grounds—not on the prospective (ir)relevance of such evidence at trial.  (ECF 34 at p. 4.)  This Court explained:

> **The parties agree that prior complaints of FCRA violations are relevant to the issue of willfulness under the FCRA**. *See Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1310 (11th Cir. 2009) ("A violation is 'willful' for the purposes of the FCRA if the defendant violates the terms of the Act with knowledge or reckless disregard for the law."). However, considering the relevance of prior complaints and the **proportionality to the needs of the case**, the Court will limit the scope of discovery in this area.

(*Id.*, emphasis added)  Such evidence, obtained through other means,  has proven to be highly relevant to Vivint's and Mosaic's knowledge, as reflected by this Court's Order and Opinion denying summary judgment on the FCRA claims, which devoted an entire section to "**Vivint and Mosaic's Knowledge of Unauthorized Credit Checks**" (ECF 145 at p. 5 (emphasis in original)).

10

That section referenced evidence dating back as far as July 2013. (*Id.*)  The Court also recognized

the relevance of this evidence in its opinion on Plaintiff's expert, stating the argument "that

continued complaints to the Better Business Bureau and the police show Defendants' lack of

concern about customer privacy … [is one of some] conclusions that that the jury may or may not

come to."  (ECF 150 at p. 7).  In reining in Plaintiffs' expert, the Court properly envisioned this

evidence going before the jury.

   In any event, the scope of discovery from a particular party simply does not confine the

scope of relevant evidence at trial.  For example, in *Johnson v. Hankook Tire Mfg., Co.*, No. 09-

113, 2013 WL 12180495 (N.D. Miss. July 31, 2013), the defendants contended that their corporate

representatives testified to a number of issues that were "outside of the scope" of prior discovery

orders, and that such testimony must therefore be excluded at trial. *Id.* at *8.  The court rejected

this argument, explaining:

> A trial is a search for truth, and this court will not necessarily
> exclude a particular answer which is based on the witnesses'
> knowledge and which would assist the jury in reaching an informed
> verdict merely because it falls outside of the strict scope of a
> particular discovery order. Sometimes the proof during a particular
> deposition can develop in an unexpected manner, but this does not
> necessarily mean that this proof is unreliable or should be excluded.

*Id.*  A discovery order merely defines the scope of discovery against a party; it does not

prospectively limit the admissibility of evidence at trial. *See Powers v. United States*, No. 17-071,

2019 WL 5801876, at *5 (M.D. Ga. Jan. 29, 2019) (denying motion *in limine*; stating, "Rule 26(c)

permits the Court to issue a protective order to control the scope of discovery—not control the

admissibility of evidence, which is better left to the Federal Rules of Evidence and a motion *in*

*limine*.").

   The story of systemic fraud and cover-up here does not stop at the state line, nor on some

arbitrary date. Defendants have known throughout this case that Plaintiffs intended to call witnesses to tell that story. (See Ex. 1, Plaintiffs' Rule 26 disclosures). The legion of BBB complaints and BBB's witness (Jane Driggs), witnesses from around the country who brought similar complaints against Vivint (Droney, Pulipati, Littlejohn), the Vivint employees (Lisa Xochimitl) and former employees (Tanner Baumgarten) that handled those complaints or committed the fraud themselves (Chamberlain), and the Vivint executives that knew of these nationwide problems but chose to ignore them (Colt Reid, Chance Allred), may all be called to give testimony demonstrating a nationwide problem. The mere fact that Defendants were not ordered to produce evidence of that problem outside Florida 2016–17 does not mean that it ceases to exist and is somehow irrelevant or inadmissible here. Of course, Vivint – the party in possession of all the knowledge and documentation – is free to introduce its own evidence in its side of the case. As noted, "a trial is a search for [the] truth[.]" *Johnson*, 2013 WL 12180495 *8.

### 3. References or evidence from other civil actions against Defendants

Vivint next argues to exclude (1) all reference to and (2) all evidence from other civil actions against Defendants outside of Florida, 2016–17. This argument – which cites to no specific actions, item of evidence, or even category of evidence – is so vague and overbroad that Plaintiffs struggle to understand it. Confronted with this overbroad motion *in limine*, the "better practice is to deal with questions of admissibility of evidence as they arise during the trial." *Whidden*, 2020 WL 605061, at *2.

First, the only court-filed complaint that will be relied upon by Plaintiffs as evidence of notice will be one that should have put Vivint on notice that there was a systemic problem with salesmen pulling credit reports without consent with electronic PCCFs. That would be Mr. Littlejohn's Complaint, filed December 23, 2016 at No. 16-CV-9446-NLH-JS in the District of

New Jersey.  At the same time in December 2016, Solar Mosaic was advising Vivint Solar of similar direct informal complaints, to wit:

- December 2016 – AF (a veteran deployed to Afghanistan at the time his credit was pulled): "No contest has been received from Vivint so this is being resolved as a confirmed case of Fraud. If any evidence arises in the near future we are willing to reopen and reevaluate." (ECF 126-20, SM 382–83; phone recording at ECF 126-33, SM 181).

- November 2016 – DG: "closing this as confirmed fraud due to the lack of notification of homeowner on credit pull." (ECF 126-20, SM 372–73).

- October 2016 – SR: "At Mosaic, we take our customers' private information very seriously. If you did not authorize anyone to run your credit then we will escalate this issue immediately." (ECF 126-20, SM 355).

The *Littlejohn* complaint would be introduced to demonstrate Vivint's notice and knowledge of a problem, not for the truth of its allegations.  This overcomes any hearsay objection.  To the extent Mr. Littlejohn testifies in person—such testimony would not qualify as hearsay, *i.e.* an out-of-court statement.  The *Littlejohn* complaint should be admitted under Rule 404(b) for the same reasons articulated above.  The probity of Vivint's knowledge, and subsequent failure to remedy the systemic problem, far outweighs the potential for prejudice.  As with all the other complaints and complainants, Vivint is free to argue to the jury that they are false, unfounded, and not credible.

Second, Vivint's attempt to prevent "all evidence" from other lawsuits is without any legal or factual basis.  Indeed, some of the other consumers to be called in this case – namely Stefanie Rasmussen of Florida, and Littlejohn and Droney of New Jersey – have brought lawsuits of their own.  Plaintiffs will be calling them as witnesses to tell their stories of placing Vivint on notice that there was a problem, a problem involving the same PCCF regime and different sales agents.  Plaintiffs will argue Vivint was negligent or reckless to continue to ignore this problem.  Their stories should not be arbitrarily excluded simply because they filed a lawsuit.  There is, after all, a preference in the law for admission of relevant evidence.  See Fed. R. Evid. 402

Also, many of Plaintiffs' noticed witnesses were involved in other cases.  These include current and former employees of Vivint and the BBB.  Plaintiffs struggle to see how involvement in another lawsuit would interfere with their testimony here.  Their stories are equally applicable.  There is no reason why their testimony or their sworn deposition transcripts from other cases cannot be used here.

### 4. The so-called inflammatory and negative statements identified by Vivint are supported by evidence.

Courts routinely deny prospective motions attempting to bar so-called "inflammatory" statements. *See, e.g.*, *Nebula Glass Int'l, Inc. v. Reichhold, Inc.*, No. 02-60703, 2004 WL 5506479, at *2 (S.D. Fla. Apr. 30, 2004) ("Defendant's Motion in Limine regarding inflammatory references in Plaintiff's opening statement and throughout trial is **DENIED** and **DENIED WITHOUT PREJUDICE** as to any speculative damages."); *Tiller v. Ford Motor Co.*, No. 03-489-J-32, 2006 WL 166530, at *13 (M.D. Fla. Jan. 21, 2006) (denying motion in limine "to prohibit inflammatory opening and closing arguments").  This is likely because "[t]he Court presumes that lawyers on both sides will conduct themselves properly during all phases of trial." *Tiller*, 2006 WL 166530, at *14.

A trial is the search for the truth, often involving many facts heavily disputed by the parties.  But some facts simply cannot be disputed.  For example, the FCRA makes it a felony to "knowingly and willfully obtain[] information on a consumer from a consumer reporting agency under false pretenses," punishable by up to two years' imprisonment. 15 U.S.C. § 1681q.  Forgery is also a felony, punishable by up to five years' imprisonment.  Fla. Stat. Ann. § 831.01; Fla. Stat. Ann. § 775.082(3)(e).

In this case, Plaintiffs allege that Defendants obtained Plaintiffs' consumer credit reports under false pretenses and forged their e-signatures—criminal conduct.  Yet Vivint—in its myopic

view—now seeks an improperly restrictive ruling that would prohibit Plaintiffs from calling a spade a spade.

At least one court in this District has rejected the type of argument pushed by Vivint here. In that case, which involved claims of fraud, the defendant argued that the plaintiffs should be prohibited from mentioning "forgery" at trial because references to this unpleaded claim would be "highly inflammatory[.]" *Warfield v. Stewart*, No. 2:07-CV-332-FTM33SPC, 2009 WL 2355780, at *1 (M.D. Fla. July 29, 2009). The court rejected the argument, explaining:

> This is a fraud case. The fact that Plaintiffs' lengthy complaint does not contain a separate "forgery" count does not preclude Plaintiffs from mentioning forgery at the trial. Plaintiffs allege that [defendants] committed fraud in several different actions: in failing to disclose important information about the property and in fraudulently altering the contract for the sale of the Property to Plaintiffs. Plaintiffs may mention "forgery" because "forgery" is a component of their fraud case against [defendants]."

*Id.* at *2. The same holds true here. Mosaic's records contain several confirmed cases of fraud against Vivint, and other consumers will testify to the same pattern of fraud and forgery by Vivint. Plaintiffs have never posited that *every* Vivint sales agent has a history of fraud or impermissible pulls, but clearly there is a substantial factual basis for Plaintiffs to call out the salesmen at issue in this case.

### 5. Vivint's financial status

Vivint contends that evidence of its financial status is inadmissible. Vivint provides no specific reason for exclusion of such evidence other than to suggest that the consideration of net worth may be inflammatory. (Vivint's Br. at pp. 11–12). However, Vivint fails to acknowledge the obvious—that financial status or net worth evidence is relevant to the award of punitive damages. *See, e.g.*, *Petralia v. McCormick & Schmick Rest. Corp.*, No. 2:13-CV-21-FTM-29UAM, 2013 WL 12153528, at *3 (M.D. Fla. Nov. 27, 2013) ("if punitive damages are sought,

15

a defendant's financial condition becomes relevant"; collecting cases).

That said, <u>Plaintiffs agree</u> to defer discovery of such evidence until after the determination of whether punitive damages are proper—a procedure that has been employed in this district and in federal courts around the country. *See, e.g.*, *Gallina v. Commerce & Indus. Ins.*, No. 806-CV-1529-T-27, 2008 WL 3895918, at *5 n.2 (M.D. Fla. Aug. 15, 2008) (acknowledging that courts have "deferred financial discovery until after proof of punitive damages"; permitting discovery of financial status but deferring disclosure of such evidence until the final pretrial conference or "such later time as the district court may direct").  If the jury answers in the affirmative on the issue of willfulness, Vivint and/or Mosaic would then disclose the evidence of their financial status that Plaintiffs requested in discovery,[3] produce a witness to testify to this topic, and the jury would briefly consider such evidence before returning to the deliberation room to determine the amount necessary to deter and punish Defendants for their intentional and reckless violations of the law. This procedure would mitigate any potential prejudice claimed by Defendants.

Although the disclosure of financial status or net worth evidence may be deferred, this should not prevent Plaintiffs from acknowledging Defendants' profit motives, their involvement and stake in the solar power industry, and other related evidence that does not directly disclose Defendants' finances.  These basic background facts provide important context that will help the jury understand Defendants' motives underlying the series of high-level corporate decisions they made that proximately caused the privacy invasions at issue.  Defendants' decisions to put profits over individual privacy rights was and remains reckless.

---

[3]    Plaintiffs' Request for Production of Documents #33 to both Defendants sought "Any and all records reflecting your current net worth, gross receipts for the past three years, copies of your annual report to shareholders for each of the preceding five years, as well as the quarterly profit and loss statements, and balance sheets for each of the preceding eight quarters."  Both Defendants provided no documents, only objections, including bifurcation.

### 6. Hendricks expert testimony.

Despite this Court's reasoned Order allowing expert Evan Hendricks to opine on certain topics but not others (ECF 150), Vivint is using this motion *in limine* to mount additional attacks on his opinions.  Plaintiff intends to elicit testimony from Mr. Hendricks that is consistent with this Court's Order.

### 7. Evidence of actual damages.

In its motion for summary judgment, Vivint argued that Plaintiffs "have not suffered any damages." (ECF 67 at p. 13).  This Court rejected that argument, concluding that "[d]amages for emotional distress can be awarded if there is a causal connection between the FCRA violation and the emotional harm," citing binding precedent from the Eleventh Circuit. (Order, ECF 145 at p. 12).  This Court further found the existence of a genuine issue of material fact as to actual damages. (*Id.* at p. 13).

Nonetheless, in its motion *in limine*, Vivint chose to attack this Court's Order and continue arguing that emotional distress damages are unrecoverable. (Vivint Br. at p. 13).  In other words, Vivint seeks to use its motion *in limine* as a vehicle to relitigate the damages issue that this Court already ruled upon at summary judgment. But the authorities are clear that "[a] motion *in limine* is not a permissible substitute for a motion for summary judgment." *Whidden*, 2020 WL 605061, at *3 (citing 21 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 5037.18).  If Vivint believed that this Court's ruling on summary judgment was legal error, it was incumbent on Vivint to move for reconsideration.

In any event, as this Court already determined, Vivint's argument lacks merit, and Plaintiffs incorporate by reference the arguments made in response to Defendants' motions for summary judgment concerning the availability of actual damages. (See ECF 140 at p. 15, incorporating ECF

141 at pp. 18–20.)

### 8. Communications offered to show pattern and practice evidence.[4]

Here, Vivint makes another sweeping request to exclude all evidence of "emails and communications" that "pertain to consumers outside of Florida and not within the period 2016 to 2017," as well as "all such emails and communications offered for the truth of the matters stated in the communications, including all emails and communications making accusations about Vivint Solar, in which Vivint Solar was not a participant in the communications." (Vivint's Br. at p. 14).

From the start, Vivint's unbounded request is hopelessly broad, as it by definition would include Mosaic's internal communications, which are nonhearsay party admissions by Mosaic under Federal Rule of Evidence 801(d)(2).   Vivint simply cannot show that the reams of communications it seeks to exclude would be inadmissible "on all potential grounds" and "for any purpose." *See Stewart*, 2007 WL 1752873, at *1; *see also Whidden*, 2020 WL 605061, at *2 ("When confronted with a broad motion *in limine*, therefore, the 'better practice is to deal with questions of admissibility of evidence as they arise' during the trial.").   To the extent Vivint seeks to limit admissibility by time scope or state lines, Plaintiffs incorporate by reference their argument made in Section III.2, *supra*.

Reading on, it becomes clear that Vivint's main issue is with a single communication from Mosaic to a consumer victim.  This communication was produced in discovery and designated as confidential by Mosaic. Vivint noticeably failed to produce a copy to the Court of this evidence that it seeks to exclude.  In any event, Vivint's own argument demonstrates the patent relevance of this document, as Vivint explains that this communication includes "highly prejudicial comments [such as] 'misuse of credit pull' being addressed by Vivint Solar's 'leadership[.]'"

---

[4]   Vivint incorrectly jumps from heading #7 to heading #9.  This argument relates to Vivint's heading number "9" on page 14 of its motion.

(Vivint's br. at pp. 14–15).  Vivint also claims that this communication is "without foundation." (*Id.*).

Plaintiffs agree that this evidence is very damaging, but there is no unfair prejudice because Mosaic's admission in this communication is supported by Mosaic's sworn interrogatory responses.  Specifically, Plaintiffs asked Mosaic to "[i]dentify all members of Vivint Solar, Inc.'s and/or Vivint Solar Developer, LLC's 'leadership' (including corporate officers, directors, shareholders, presidents, and vice presidents) who you notified at any point in or before October 2017 of the misuse of credit pulls and/or any problem relating to impermissible pulls. *See* **Solar Mosaic_Cardona-Brown 000419**." (ECF 125-21, Mosaic Response to Plaintiffs' Second Set of Interrogatories No. 17, emphasis added)).   After objecting, Mosaic responded: "in or before October 2017, [Mosaic] discussed the matter of alleged 'misuse of credit pulls and/or any problem relating to impermissible pulls' with **Vivint Chief Commercial Officer Thomas Plagemann, Vivint Chief Sales Officer Chance Alred,** and **Vivint Chief Revenue Officer Paul Dickson**." (*Id.*, emphasis added).  Almost all of a party's evidence will be prejudicial to the other side; that is the nature of the adversarial process.  But Vivint has fallen far short of meeting its burden to establish "unfair prejudice" under Federal Rule of Evidence 403.

Vivint also contends that Mosaic's internal records cannot be authenticated under Federal Rule of Evidence 901, but in doing so, Vivint admits that the communication derives from Mosaic's "ZenDesk" system. (Vivint br. at p. 15).   It is of no consequence whether the communication was sent to the consumer, and Mosaic has not disclaimed the authenticity of the records it produced in its own discovery responses.  Further, the case Vivint relies upon to argue that this communication is inauthentic demonstrates the low bar required for authentication, as the court there declined to exclude such evidence as inauthentic. *See Democratic Republic of Congo*

*v. Air Capital Grp., LLC*, No. 12-20607, 2013 WL 2318904, at *1 (S.D. Fla. May 28, 2013).

Vivint cannot supply a principled basis to exclude the large swath of unidentified communications it generally references. The *single* communication it does identify is clearly relevant and admissible as evidence that Vivint was on notice of a problem relating to impermissible pulls, and as an admission by Mosaic that it knew of such a problem.

### 9. Evidence of fraud against Mitchell Coan.[5]

As discussed above, Rule 404(b) provides that while evidence of other misconduct is not admissible solely to prove an individual's bad character propensities, such evidence may nonetheless "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" Fed. R. Evid. 404(b).

Before going up to Jerard Brown's door in September 2017 and allegedly forging Brown's signature on a PCCF, Mitchell Coan worked for Vivint Smart Home ("VSH"). VSH is a sister company of Vivint Solar, for whom Coan sold alarm systems door-to-door. In his deposition, Coan stated that he had never been accused by a consumer of forgery. (ECF 67-3, Coan depo. at p. 40). Moreover, he claimed he never heard of any allegation against a VSH representative that documents were forged. (*Id.*). Coan said he was fired by VSH but was never told why; he testified that he believed he was fired due to "bad attrition" (customers not paying their bills) with some accounts he created in Milwaukee. (*Id.* at pp. 48–57).

But Plaintiffs deposed a VSH corporate representative, Clark Hymas, who testified otherwise and provided documents to the contrary. Hymas testified that VSH's records indicate there are no less than twenty-four (24) accounts assigned to Coan where VSH noted a special cancellation request of the accounts due to forgery. (ECF 126-8, Hymas depo. at pp. 30–49, filed

---

[5]     This argument relates to Vivint's matter number "10" on page 15 of its motion.

under seal).   Moreover, Coan was terminated by VSH for "policy/ standards/ violation/ misconduct."  (*Id.* at pp. 54–55).

The VSH testimony goes directly to the Rule 404(b) non-propensity elements of Coan's motive, knowledge, intent, and absence of mistake.  Defendants sat through the deposition of VSH, a witness noticed in Plaintiffs' Rule 26 disclosures.  Moreover, Federal Rule of Evidence 608(b) permits Plaintiffs to attack Coan's character for truthfulness by inquiring about these specific instances of conduct on cross examination, as there can be no question that "they are probative of the character for truthfulness or untruthfulness." *MasForce Europe, BVBA*, 2013 WL 12156469, at *3.

The fact that Coan did not tell Vivint Solar about his prior misconduct is also relevant because it shows that Coan believed he could continue getting away with the same fraudulent conduct so long as Vivint Solar did not inquire.  It also shows that Vivint Solar recklessly failed inquire about employee backgrounds, even from its own sister company.  This relevance outweighs any alleged – but utterly unsupported – claims of unfair prejudice alleged by Vivint.  The VSH evidence of complaints of forgery on Mitchell Coan accounts is relevant and admissible.

## IV.   CONCLUSION

Throughout discovery, Vivint vigorously opposed discovery of highly relevant documents, including the many consumer complaints at issue in this motion.  Vivint's litigation conduct constrained Plaintiffs to move to compel, and then later to move to enforce the Court's discovery order.  Vivint's motion is yet another attempt to conceal relevant evidence of its wrongdoing.  The jury will be charged with determining whether Vivint's high-level corporate decisions were reckless, and whether the salesmen at issue knowingly or recklessly violated the FCRA.  Vivint should not be permitted to deprive the jury of this highly relevant evidence of a nationwide pattern

and business practice of misconduct.  Vivint's motion must be denied.

Respectfully submitted:

Date: <u>April 27, 2020</u>                                 <u>*/s/ Andrew M. Milz*</u>
ANDREW M. MILZ
*Admitted pro hac vice*

FLITTER MILZ, P.C.
450 N. Narberth Avenue, Suite 101
Narberth, PA 19072
(610) 822-0782 (ph)
(610) 667-0552 (fax)
amilz@consumerslaw.com

CRAIG E. ROTHBURD
FBN: 0049182
320 W. Kennedy Blvd., #700
Tampa, Florida   33606
(813) 251-8800 (ph)
(813) 251-5042 (fax)
crothburd@e-rlaw.com
mropp@e-rlaw.com

**ATTORNEYS FOR PLAINTIFFS**

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| ELIZABETH CARDONA and | : |
| JERARD BROWN, | : |
| Plaintiffs, | : |
| | : |
| v. | :   CASE NO.:   18-cv-02838-SCB-JSS |
| | : |
| VIVINT SOLAR, INC., | : |
| VIVINT SOLAR DEVELOPER, LLC, and | : |
| SOLAR MOSAIC, INC., | : |
| Defendants. | : |

## CERTIFICATE OF SERVICE

I, Andrew Milz, hereby certify that a copy of Plaintiffs' Opposition to Vivint Defendants'

Motion *in Limine* has been electronically filed with the Clerk of Court using the CM/ECF system,

which sent notification of such filing to all counsel of record.

Date: 4/27/2020                              */s/ Andrew M. Milz*
                                             ANDREW M. MILZ