UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JERARD BROWN and
ELIZABETH CARDONA,

    Plaintiffs,

v.                                                   Case No. 8:18-cv-2838-T-24 JSS

VIVINT SOLAR, INC., ET AL.,

    Defendants.
_____/

**ORDER**

This cause comes before the Court on Plaintiffs' Motion in Limine. (Doc. No. 155). Solar Mosaic opposes the motion. (Doc. No. 162). As explained below, the motion is denied.

**I.  Background**

Plaintiffs Jerard Brown and Elizabeth Cardona bring this lawsuit alleging violations of the Fair Credit Reporting Act by Defendants. Defendant Vivint Solar, Inc. is the parent company of Defendant Vivint Solar Developer, LLC (collectively referred to as "Vivint"), and they sell solar panels. Defendant Solar Mosaic, Inc. ("Mosaic") is a financing company that finances solar energy systems.

Vivint's door-to-door salesmen go to potential customers' houses to attempt to sell Vivint's solar panels. These salesmen have iPads with them, on which a potential customer can access Mosaic's online credit application to apply for financing for the purchase of Vivant's solar panels. Plaintiffs contend that Vivint's salesmen came to their houses and completed Mosaic's online credit application in Plaintiffs' names without Plaintiffs' knowledge or consent. Thus, Plaintiffs contend that all three defendants acted together through Vivint's door-to-door salesmen to obtain Plaintiffs' credit reports under false pretenses and without any permissible purpose or authorization.

**II.  Plaintiffs' Motion in Limine**

Plaintiffs move to exclude Mosaic's newly disclosed spreadsheet containing a summary of credit application data.[1]  Specifically, the spreadsheet shows credit applications submitted by Vivint on behalf of its customers in Florida during 2016 and 2017.  (Doc. No. 156-2).  The purpose of this spreadsheet is to show that in Florida during 2016 and 2017, Vivint submitted 11,089 credit applications on behalf of its customers.[2]  Mosaic wants this information admitted into evidence because Mosaic contends that less than 100 of these customers complained of fraud in connection with these credit applications.

Plaintiffs move to exclude this evidence on two bases: (1) Mosaic has not met the admissibility requirements of Federal Rule of Evidence 1006; and (2) the spreadsheet was not timely disclosed, so it should not be admissible, pursuant to Federal Rule of Civil Procedure 37(c)(1).  As explained below, the Court rejects both arguments.

**A.  Federal Rule of Evidence 1006**

Plaintiffs move to exclude the spreadsheet, because Mosaic has not met the admissibility requirements of Federal Rule of Evidence 1006.  Rule 1006 provides the following:

> The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

---

[1] Plaintiffs and Mosaic also addressed this issue in Doc. Nos. 156 and 167.  The Court has considered the briefing in those documents on this issue.
[2] Mosaic contends that after accounting for duplicate credit applications, the 11,089 credit applications listed on the spreadsheet were submitted by 10,273 individuals.

F.R.E. 1006. Plaintiffs argue that because Mosaic has not made the underlying data from which the spreadsheet was made available for review by Plaintiffs, the Court should not allow this summary document to be admitted into evidence.

Mosaic responds that the spreadsheet is not a summary document, and therefore, Rule 1006 does not apply. Instead, Mosaic argues that the spreadsheet is a business record that is admissible under Federal Rule of Evidence 803(6), and there is no underlying data to produce.

The business record hearsay exception contained in Rule 803(6) provides that a record of an act or event is admissible if: (1) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (2) the record was kept in the course of a regularly conducted activity of the business; (3) making the record was a regular practice of that activity; (4) all of these conditions are shown by the testimony of a qualified witness; and (5) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. F.R.E. 803(6). Mosaic has submitted the declaration of Alexander Hughes, a Data Scientist at Mosaic, to support its contention that the spreadsheet is an admissible business record. (Doc. No. 156-1).

In his declaration, Hughes states the following: (1) Mosaic uses a cloud-based data warehouse product called Redshift; (2) Mosaic uses the Redshift database in its regular course of business and stores data related to credit applications as a regular business practice; (3) every time Vivint representatives electronically submitted a credit application to Mosaic, Mosaic would make its credit decision, and all of the information from the application (along with Mosaic's decision) was automatically transmitted in real time to the Redshift database; (4) the Redshift database stores data related to credit applications submitted by various solar energy vendors across many states during many years; (5) Mosaic can view subsets of the voluminous

data contained in the Redshift database by writing a computer command (*i.e.,* a script) to view the desired data subset; and (6) on February 28, 2020, Hughes wrote a script in the Redshift database to produce the subset of data contained in the proffered spreadsheet (*i.e.,* all credit applications submitted by Vivint from consumers in Florida from January 1, 2016 though December 31, 2017). This declaration supports Mosaic's contention that the spreadsheet meets the first four requirements of a business record.

The fifth requirement is that Plaintiffs do not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. Plaintiffs contend that because Mosaic will not allow discovery into the underlying credit applications, Plaintiffs cannot be assured of the data's trustworthiness. Plaintiffs' argument is based on their unyielding belief that the spreadsheet is a summary that entitles them to conduct discovery into the underlying credit applications. However, this Court finds that the spreadsheet is not a summary.

In United States v. Warner, 638 Fed. Appx. 961 (11th Cir. 2016), one of the issues before the court was whether to evaluate the admissibility of two spreadsheets as business records or summary documents. The spreadsheets summarized the fraudulent tax returns allegedly submitted by the defendant. See id. at 962. The court found that that the spreadsheets were business records, stating the following:

> "Rule 803(6) requires that both the underlying records and the report summarizing those records be prepared and maintained for business purposes in the ordinary course of business and not for purposes of litigation." . . . "[T]he touchstone of admissibility under [Rule 803(6)] is reliability, and a trial judge has broad discretion to determine the admissibility of such evidence."
>
> Computer generated business records are admissible under the following circumstances: "(1) [t]he records must be kept pursuant to some routine procedure designed to assure their accuracy, (2) they must be created for motives that would tend to assure accuracy (preparation for litigation, for example, is not such a motive), and

> (3) they must not themselves be mere accumulations of hearsay or uninformed opinion."
>
> \*      \*      \*
>
> [This case is similar to] United States v. Fujii, 301 F.3d 535, 539 (7th Cir.2002), [as] . . . the records in Fujii were "electronically stored information and the summary was simply a printout of that information." In Fujii, the District Court admitted airline check-in and reservation records and flight manifests that were kept in the ordinary course of business and printed at the government's request. The Seventh Circuit held that "[c]omputer data compiled and presented in computer printouts prepared specifically for trial is admissible under Rule 803(6), even though the printouts themselves are not kept in the ordinary course of business." The [Fujii] court reasoned that "because the information was printed out at the request of the [government] does not deprive the printouts of its business-record character."

Warner, 638 Fed. Appx. at 963-64 (internal citations omitted).

Likewise, in the instant case, the records at issue are "kept pursuant to some routine procedure designed to assure their accuracy," they are "created [based on] motives that would tend to assure accuracy," and they are not "mere accumulations of hearsay or uninformed opinion." See id. at 963. The Court finds that the spreadsheet is a trustworthy document.

Plaintiffs argue that the underlying data reported in the spreadsheet is hearsay, because it comes from the customers' statements in their credit applications. Therefore, Plaintiffs contend that Mosaic's spreadsheet based on that data contains inadmissible hearsay. However, Mosaic is not using the spreadsheet to prove the truth of any matter asserted therein; it is using the spreadsheet to prove the number of credit applications submitted by Vivint customers in Florida in 2016 and 2017. Accordingly, the Court finds that the spreadsheet is an admissible business record.

### B.  Federal Rule of Civil Procedure 37(c)(1)

Plaintiffs also argue that the spreadsheet should be excluded pursuant to Federal Rule of Civil Procedure 37(c)(1), because it was not timely disclosed.  Rule 37(c)(1) provides:

> If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37(c)(1).

Mosaic responds that the late disclosure of the spreadsheet was an inadvertent oversight, and once it realized its mistake, Mosaic produced the spreadsheet.  Therefore, Mosaic argues that the sanction of exclusion of this evidence is too harsh a sanction for the late disclosure.

This Court is guided by the following considerations:

> The discovery process is designed "to avoid surprise and minimize prejudice." No party can use information after failing to provide it under Rule 26, "unless the failure was substantially justified or is harmless." The non-disclosing party bears the burden of showing its failure to disclose was substantially justified or harmless.  And the Court enjoys "broad discretion in determining whether a violation is justified or harmless."  To determine whether a violation was justified or harmless, courts have found the following factors helpful: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence."

Knowles v. Inzi Controls Alabama, Inc., 2019 WL 4551609, at *3 (M.D. Ala. Sept. 19, 2019)(internal citations omitted).

This evidence consists solely of the number of credit applications submitted in Florida through Vivint in 2016 and 2017.  Mosaic contends that Plaintiffs never sought discovery on this particular issue, and Mosaic's failure to provide it sooner was an inadvertent oversight.  Mosaic

argues that any surprise regarding the number of credit applications can be cured by allowing Plaintiffs to depose Hughes prior to trial. This evidence is important to Mosaic's defense that the percentage of credit applications in which fraud was alleged is relatively small. These considerations favor admissibility.

Plaintiffs also argue that they would be prejudiced, because Mosaic has not allowed discovery into credit applications submitted by other solar power installers during the same period. Plaintiffs contend that such discovery is necessary in order to put the spreadsheet evidence in context and may show that the credit inquiry-to-installation rate was far lower for Vivant than for other solar power installers. The Court rejects these arguments.

Discovery into credit applications submitted by other solar power installers during the same period is not relevant to the issues in this case. Even if such discovery revealed that the credit inquiry-to-installation rate was far lower for Vivant than for other solar power installers, there are many variables that affect whether someone chooses to purchase solar panels through Vivint and finance through Mosaic. For example, a consumer may choose to buy solar panels from another supplier, may choose to pay cash or lease the panels rather than finance them, or may simply choose not to buy the solar panels for many reasons other than the credit application being fraudulently submitted. Accordingly, the Court denies Plaintiffs' request for exclusion of the spreadsheet under Rule 37(c)(1), as Mosaic's late disclosure was harmless, any surprise can be cured by deposing Hughes, and Plaintiffs are not otherwise prejudiced.

### III. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1)　Plaintiffs' Motion in Limine (Doc. No. 155) is **DENIED**.

7

(2)	Plaintiffs may depose Hughes within 35 days of this order on the issues of creation of the spreadsheet and storage of the credit application data in the Redshift database. The Court encourages the parties to work together to complete Hughes' deposition prior to the June 2, 2020 pretrial conference in this case.

DONE AND ORDERED at Tampa, Florida, this 6th day of May, 2020.

SUSAN C. BUCKLEW
United States District Judge

Copies to: Counsel of Record